IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | |
|---|---|
| LEVIN, *et al.* | |
| *Plaintiffs*, | CASE NO. 17-CV-1723 |
| v. | |
| ABRAMSON, | |
| *Defendant*. | |

**PLAINTIFFS' RESPONSE TO DEFENDANTS' COMBINED 12(b)(1) and 12(b)(6) MOTION TO DISMISS**

NOW COME the Plaintiffs, Alisa Levin and Levin Law, Ltd. (hereinafter referred to as "Levin" or "Plaintiffs"), and as and for their Response to the Defendant's combined Motion to Dismiss, brought pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) by Defendant Paul L. Abramson ("Paul"), and in opposition thereto, Plaintiffs state as follows:

**I.  DEFENDANT'S 12(b)(6) MOTION MUST BE DENIED**

    **a.  THE COMPLAINT WAS FILED WITHIN ONE YEAR OF THE PUBLICATION OF THE YELP REVIEW**

The Complaint in this matter was timely filed, and there is no basis for dismissal on these grounds. The complained-of online posting was made on March 22, 2017. *See,* Complaint at ¶63. The instant matter was filed on March 8, 2018. Under the applicable Illinois statute, 735 ILCS 5/13-201 for which defamation and privacy acts are outlined, "an action for slander, libel or for publication of matter violating the right to privacy, shall be commenced within one-year next after the cause of action accrued." A plaintiff's state-law cause of action for defamation accrues, and the one-year statute of limitations begins to run, on the date of publication of the allegedly defamatory material. *See, Hukic v. Aurora Loan Services*, 588 F.3d 420, 435 (7th Cir. 2009). It is the general rule that each communication of the same defamatory matter, by the same defamer, whether to a

new person or the same person, is a separate and distinct publication, for which a separate cause of action arises. *Id.*, at 436, citing Restatement (Second) of Torts §577A, cmt a (1977). Publication to a group, is treated as one publication, but the same publication over a period of time in multiple instances, forms the basis for multiple causes of action. *Id.*

Taking this authority into account, the Court should find that the instant matter was timely. Paul admits by his Motion that he made the publication, and he does not deny that the Complaint was filed within one-year of that publication. He rests his case on the matter being filed outside of prior admitted publications, but in light of the fact that each defamatory publication would be actionable within one year, then it stands to reason that if the initial Yelp review was on March 22, 2017 and the instant Complaint was filed on March 8, 2018, then the matter is timely, and the Court ought to deny the Motion.

      **b. PAUL'S STATEMENTS AND PUBLICATION TO THE CBA AND THE ARDC DO NOT FORM THE FOUNDATION FOR THE CLAIM OF DEFAMATION**

By his Motion, Paul suggests that the predicate basis for the Complaint is the communication to the ARDC and the CBA, as outlined in Paragraphs ¶47-51 of the Complaint. These instances as alleged, while upsetting, were not the publications that caused Plaintiffs to file the instant case. As alleged, Paul communicated to a number of people and entities about the Plaintiffs. However, it was not until Paul posted the Yelp review that Plaintiffs decided to act, and they had one year from that publication to do so.

The Complaint does not detail the specific language of Paul's communications to the ARDC and the CBA because those contacts are not the basis of the instant Complaint and although notice pleading would certainly put Paul on notice if that were the case, it is nonetheless somewhat obvious that clear and intentioned pleading would mandate that if Plaintiffs were relying upon the

ARDC and CBA matters for their foundation, actual facts would need to be alleged as to what is claimed was said in those publications. Instead, as is detailed in Paragraphs 62-65, what was alleged, is that although those matters formed some background into the relationship, Paul posted a Yelp review on the internet, on the Plaintiffs' Chicago Yelp page, which forms the basis for this action. It is those publications which Plaintiffs argue are defamatory, and those specific allegations that are found in Count I, as well as the accompanying Exhibit A.

As the Court can see from review of the pleading, it is clear that Plaintiffs refer to the Yelp "online statements" on multiple occasions, and that Plaintiffs alleged that "the Yelp review and its later update constituted an untrue and verifiable statement by Paul that the public can see and would ascribe truthful statements to." *See*, Complaint at ¶76. Indeed, while Levin did receive a copy of the CBA Complaint and responded to it voluntarily in writing, Plaintiffs never even received a copy of Paul's complaint to the ARDC, so Plaintiff could not (and thus did not try) to specifically allege facts as to the ARDC matters, since she was never informed of them (and it was not those publications which were put into the internet for the entire world to see). While the timing of the ARDC matter's commencement suggested that it was likely the duplicate of the CBA complaint sent to the ARDC, the Plaintiffs never received any copies, so Plaintiffs could not and did not take action as a result of those, and they do not by this litigation argue that such communications were "the" defamatory acts for which liability ought to attach.

Here, while Plaintiffs agree that matters submitted to the ARDC do enjoy an absolute privilege as to communications made solely and specifically to that body, this does not mean that Paul did not defame Plaintiffs to the ARDC, or that the privilege is fully applicable as to the CBA communication(s) or other publications. Under applicable rules, a grant of immunity is limited to those communications made by such persons to the Attorney Registration and Disciplinary

3

Commission, its administrators, staff, investigators and members of its board but thus those same statements made to others, do not enjoy any privilege and may be actionable.

Absolute privilege may attach to quasi-judicial proceedings. *See, Allen v. Ali*, 105 Ill.App.3d 887, 890 (1st Dist. 1982). Quasi-judicial functions are ones that perform a judicial function and determine legal rights. *Id*. While some jurisdictions consider bar associations since they have an ethics committee in most cases, Illinois Courts have found that the Chicago Bar Association has no such quasi-judicial function because that function has been delegated by the Illinois Supreme Court to the ARDC. *Id*., at 891. As such, communications with the ARDC would be absolutely privileged, but the same or similar communication with the CBA would enjoy at most, a conditional or qualified privilege. *Id*. For a communication to receive protections of a conditional or qualified privilege, there must be good faith on the part of the defendant, an interest to be upheld, a statement limited in scope to the extent of that interest, a proper occasion and publication in the proper manner to the proper parties. *Id*., citing *Judge v. Rockford Mem. Hosp.*, 17 Ill.App.2d 365, 377 (2nd Dist. 1958).

When a conditional or qualified privilege has been shown, the plaintiff has the burden of alleging and proving actual malice. *Id*. Paul, in the first instance, has not demonstrated conditional privilege, and instead, he asserts a full privilege as if the CBA and the ARDC were identical in their roles and that Supreme Court rules apply to them equally. That is not the case. In any event, a qualified privilege is abused if the speaker does not believe the truth of the defamatory matter or has no reasonable grounds for believing it to be true. *See, Zeinfield v. Hayes Freight Lines, Inc.*, 41 Ill.2d 345 (1968) and *New York Times v. Sullivan*, 376 U.S. 254, 280 (1964)(actual malice set forth). A court can examine the facts and circumstances surrounding the statement in order to ascertain what is good faith. *Spencer v. Community Hospital*, 87 Ill.App.3d 214, 220 (1980).

In this matter, the Court will have to determine if a privilege applies and if it can be overcome. While Plaintiffs do not argue that the CBA or ARDC communications are at issue in the litigation, what is true is that Paul's conduct has been based directly upon his obvious attempts in seeking to coerce Plaintiffs into lowering or refunding the legal fee for the approved work that Levin performed at Paul's insistence. This litigation is not intended to and does not seek to (in any way) adjudicate the ARDC and CBA matters nor was it filed in response to them, and the issue is not the underlying work performed. Those matters are concluded.[1]

Here, Plaintiffs base the tort claims on the Yelp reviews,[2] which such online publications were mentioned more than 15 times in the pleading. As such, this Court should not dismiss the Complaint or otherwise entertain any privilege pertaining to the ARDC or CBA. Paul admits by his Motion that he did draft and post an online review. Consequently, when coupled with the allegations and exhibits within the Complaint, this Court can easily conclude that the litigation is about the Yelp review, and nothing more. Dismissal is inappropriate.

### c. PAUL'S DEFAMATORY YELP PUBLICATION WAS BEYOND OPINION AND IS ACTIONABLE

Paul's original and updated Yelp reviews constitute actionable defamation and this Motion ought to be denied since there is no First Amendment protection that can serve as a shield for this litigation. A statement is considered defamatory if it tends to cause such harm to the reputation of another that it lowers that person in the eyes of the community or deters third persons from associating with him. *See, Artunduaga v. University of Chicago Medical Center*, 2013 WL 2151685, *2 (N.D. Illinois 2013), citing *Kolegas v. Heftel Broad Corp.*, 154 Ill.2d 1, 10 (1992). To

---

[1] While Paul has argued at the bottom of Page 9 that in February 2016 he recovered the $9167 charged on his credit card in, in fact, that was a provisional credit, insofar as the funds were credited back to Plaintiffs on June 2, 2016 with the bank finding in Levin's favor after an investigation. Since a 12(b) motion is an inappropriate place to submit material outside the pleadings, Plaintiff will refrain from submitting materials that the Court cannot consider.
[2] Since this litigation began, Plaintiffs have found additional instances of the same review being posted elsewhere online.

state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Id.*, citing *Green v. Rogers*, 234 Ill.2d 478, 491 (2009).

As is clear from Paul's Yelp reviews, (and the point of leaving a review in general) is that he was clearly trying to deter third persons from association with Levin. *See*, Exhibit A to Complaint as Amended. Attributing illegal conduct, such as by using the exact words "illegally charged my credit card" and "fraudulent transaction" when Paul knew that the credit card charges were for work he had asked for, authorized and approved, and also because Paul knew that his credit card company had resolved the issue in Levin's favor (by re-depositing the funds in Levin's account after the dispute in June 2016 after it had provided him a provisional credit), Paul intended to deter others from doing business with Levin, and he imputed the commission of a crime and an inability to practice law – all of which are actionable as defamation.

In a *per se* defamation action under Illinois law, a plaintiff may recover only if the defendant's statements fit into one of the limited categories of statements or imputations considered actionable per se: 1) commission of a criminal offense; 2) infection with a venereal disease, inability to perform or want of integrity in the discharge of duties of public office; 4) fornication or adultery; or 5) words that prejudice a party in her trade, profession or business. *See, Muzikowski v. Paramount Pictures Corp.*, 322 F.3d 918, 925 (7th Cir. 2003). Federal courts allow notice pleading. *Id.*, at 926 (defamation claim may proceed under the usual rules for notice pleading established by Rule 8). Here, Paul's Yelp Reviews clearly satisfy factors one and five and they are actionable.

Paul's Motion asserts his belief and indeed, his hope, that the Court would find the Reviews to be non-actionable assertions of opinion. Statements of opinion, although defamatory, do not give

6

rise to defamation claims. *Id*., citing *Giant Screen Sports v. Canadian Imperial Bank of Commerce*, 553 F.3d 527, 534 (7th Cir. 2009). First Amendment protections must be balanced against a plaintiff's right to be free from such statements or injurious publications. Actionable defamation must contain an objectively verifiable factual assertion. *Id*. Although in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law. *Id*., citing *Giant Screen, supra,* at 535. The emphasis in the test for determining the actionability of an allegedly defamatory statement is on whether the statement contains an objectively verifiable fact or assertion. *See, Hopewell v. Vitullo*, 299 Ill.App.3d 513, 518-19 (1st Dist. 1998). As outlined in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), the test outlines three factors by which a court is to review such defamatory publications for First Amendment protections. They are: 1) whether the language of the statement has a precise and readily understood meaning (while bearing in mind that the First Amendment protects overly loose, figurative, rhetorical, or hyperbolic language, which negates the impression that the statement actually presents facts); 2) whether the general tenor of the context in which the statement appears negates the impression that the statement has factual content; and 3) whether the statement is susceptible of being objectively verified as true or false. *Id.,* at 19-21.

      Here, by his Yelp Review, Paul has intended that the public not only believe him, but that third parties not do business with Levin or trust Levin as an attorney, through his claim of "illegal conduct" and "inabilities" as well as claims, *inter alia*, that Levin is a "con artist". This reference is not only disastrous for an attorney whose stock and trade are competence and trustworthiness and respect for the law, they are actionable because they fit squarely into the auspices of the *per se* standard and they evidence a clear message that Plaintiffs' conduct was illegal (which is an

7

objectively verifiable standard insofar as conduct is either illegal or it is not). Paul's words were not all "loose" or "figurative" or "imprecise." Paul's statements, under the first of the *Mlikovich* standards, if taken as simply true under their ordinary meaning, imply specific knowledge about allegedly illegal conduct of Plaintiffs. The first factor is satisfied within the *Milkovich* standard.

Second, the Court must consider the background context as the Supreme Court directs. The intent is obviously to deter others from doing business with Plaintiffs, since Paul states: "you have been warned." *See*, Exhibit A. Examining the general tenor as outlined in the general and specific allegations of Count I, the Court could easily conclude that the tenor does not negate the impression that the statement has factual content. Put another way, Paul's statement implies factual content because it refers to specific conduct (credit card fraud) and specific perceived errors in the practice of law (the discussion about the affidavit), which convey to a third party, a clear message, which is defamatory. The statements meet the *Milkovich* standard because they create the impression in a third party that the statements are or could be true. *See, Hopewell, supra*, at 519, citing *Milkovich*, at 21. See also, Macklem v. Pearl, 2011 WL 2200037 (N.D. Ill. 2011)(the mere implication of fraud or statements where it's clear the commission of a crime is suggested, are defamatory *per se*).

Lastly, the conduct complained of satisfies the third *Milkovich* prong because the statements can be objectively verified as being true or false. *Id*. The focus of the court is whether the statements contain objectively verifiable assertions. *Id*. Here, whether or not Plaintiffs engaged in illegal conduct is objectively verifiable. As such, Plaintiffs can satisfy the factors outlined by our Supreme Court, and Paul's assertion that his statements are non-actionable and protected opinions, are arguments which lack foundation. By his Motion, Paul minimizes his conduct and asserts that the mere name-calling and "con artist" reference is not actionable (appearing to rely upon the 1st Amendment, the doctrine of "innocent construction" and Section 230 of the Communications

8

Decency Act, although not specifically asserting specific authorities which bolster or support these references). This Court should not find agreement with Paul's theories.

In the first place, the doctrine of innocent construction only helps Levin, and cannot be plausibly relied upon by Paul for an escape-hatch. This is so because the "innocent construction rule" requires courts to consider the written or oral statement in context, giving words and their implications their natural and obvious meaning; if so construed, ***statement may reasonably be innocently interpreted or reasonably interpreted as referring to someone other than the plaintiff, it cannot be actionable per se***. *See, Bryson v. News America Publications, Inc*., 174 Ill.2d 77, 90 (1996)(Emphasis added). Here, the review names Levin specifically and was placed upon the firm's Yelp page, so there can be no doubt as to whom Paul was referring. Therefore, the innocent construction rule is inapplicable.

As to Paul's assertion that his conduct is First Amendment protected speech as a non-actionable opinion, the *Quinn* case, being resolved on innocent construction cannot save Paul's argument. A statement is not actionable if it involves an assertion of an opinion and not a fact. *See, Liu v. Northwestern University*, 78 F.Supp. 839, 849 (N.D. Ill. 2015). Whether a statement is one of opinion or fact is a question of law. *Id*., citing *Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). While not everything posted online is actually a fact, third parties who view internet reviews can see and interpret those statements as factual, which is damaging to one who is the subject of such a publication. In fact, the plethora of case law on topic shows that courts reject the argument that, as a matter of law, no reasonable person would take an internet posting as a statement of fact, since the assumption is that one reason people use online boards or review sites is to seek information. *See, e.g., Hadley v. Doe*, 2014 IL App (2d) 130489, citing Yrissa Barnett Lidsky, *Silencing John Doe: Defamation & Discourse in Cyberspace*, 49 Duke L.J. 855, 903-04 (2000).

Indeed, Yelp and similar sites are conduits of information based upon personal user experiences, and so postings are intended to (and according to Yelp's guidelines require) a posting based upon an actual and specific personal experience, which would then imply if not outright describe, factual assertions capable of verification. Presumably, a third party intending to hire Levin could ascertain whether or not there were public proceedings against Levin (in any judicial or quasi-judicial forum) since those facts are generally public, and that Paul's claims of "illegal conduct" and credit card "fraud" were independently verifiable on some level.

Therefore, taking these principles into account, the First Amendment and innocent construction rule do not provide cover for Paul, since not only do the Yelp Reviews make clear who Paul was referring to, they clearly suggest factual claims which if totally true, partially true, or even if merely arguable, would imply or suggest to an average person that Levin is at a minimum, someone who should not be hired or trusted. These hallmarks are the very essence of actionable per se claims. Courts have found statements actionable where a factual basis has been provided for the conclusion that drawn by the author or publisher (i.e. a [plaintiff] was "incompetent" or that a "patent was essentially worthless" or where it was said that the person was "working a scam" by filing "unwarranted suits for settlement money" which concerned his "conduct and his character" and "suggested the article was factual"). *See, Liu v. Northwestern University, supra,* at 850, citing *McDaniel v. Loyola Univ. Med. Ctr.*, 2014 WL 4269126, at *13 (N.D. Ill.); *Solaia Technology LLC v. Specialty Pub. Co.*, 852 N.E.2d 825 (2006); *Kumaran v. Brotman*, 247 Ill.App.3d 216 (1993).

A statement can be deemed a constitutionally protected expression of opinion "only if it cannot be reasonably interpreted as stating actual fact." *See, Schendell v. Best Buy Stores, L.P.*, 2007 WL 723083, *4 (N.D. Ill. 2007). By Paul's assertions and clear suggestion that he had personal experience which should be believed and considered truthful and to serve as a "warning"

to others, Paul intended that his claims be believed, and they are stated as facts. Paul's Yelp Review acknowledges a personal experience, advances a claim of criminal conduct in "illegally" charging his credit card, he mentioned a specific task that was the subject of a portion of the litigation which implied an agreement had been breached by Levin relative to the legal services, and his description of Levin implied factual claims that could be verified as being true or false. Here, insofar as the Motion has failed to outline why its claims and perceived authorities are controlling, this Court should decline Paul's invitation to dismiss, and deny the Motion. There is no First Amendment nor innocent construction protection, and as a result, Paul's Motion should be denied.

II. **DEFENDANT'S 12(B)(1) MOTION MUST BE DENIED BECAUSE THIS COURT HAS CLEAR JURISDICTION OVER THIS MATTER AND THE SAME CAN BE SATISFIED IN MULTIPLE WAYS**

Paul's Motion lacks a reasonable or valid foundation in the law, and because Paul is subject to the jurisdiction of the Court because he committed torts in the State of Illinois against Illinois Plaintiffs, he admittedly hired the Plaintiffs in Illinois for Illinois legal work which was performed, and Paul is still doing business in Illinois connected to the same litigation, the Motion must be denied.

   a. **PAUL COMMITTED A TORT IN ILLINOIS WHICH IS A BASIS FOR JURISDICTION**

Under the Illinois Long-Arm Statute, it is fair for Paul to litigate in Illinois because intentional publication of defamatory material in Illinois, intended for an Illinois audience against Illinois parties, is the very subject-matter upon which the rules were based. A defendant with continuous and systematic contacts with a state is subject to general jurisdiction there in any action, even if the action is unrelated to those contacts. *See, Tamburo v. Dworkin,* 601 F.3d 693, 701 (7th Cir. 2010). Specific jurisdiction is appropriate where the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business

in the forum; and where the alleged injury arises out of the defendant's forum-related activities. *Id*. A court's exercise of personal jurisdiction may be limited by the applicable state statute or the federal constitution, but the Illinois long-arm statute permits the exercise of jurisdiction to the full extent permitted under the Fourteenth Amendment. *Id.,* citing 735 ILCS 5/2-209(c). Jurisdiction is not limited to analysis of how many times a defendant crossed state lines, since courts acknowledge that a substantial amount of business is transacted solely by mail and wire communications (thus obviating the need for physical presence within a state in which business is conducted). *Id*., citing, *RAR, Inc. v. Turner Diesel, Ltd*., 107 F.3d 1272, 1278 (7th Cir. 1997), relying upon *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985).

By his Motion, Paul admits that he hired the Plaintiffs. *See*, Motion at 1 ("On October 30, 2015, defendant hired plaintiff from her advertisement…"). However, Paul argues that he has not purposely availed himself of the benefits of conducting business in Illinois "because he did nothing other than respond to a solicited Craigslist posting fortuitously from a plaintiff who happens to be an Illinois resident." *See,* Motion at 6-7. The rationale appears to be, that the hiring of a lawyer to perform work in Illinois on a Chicago-based lawsuit which was subject to a written retainer agreement for those legal services, was not business at all, and therefore, could not form the basis of jurisdiction. Then, curiously, Paul asks the Court to take judicial notice of his father's case (the same one that Plaintiffs worked on, case Number 13 CH 17457) and he denies that he availed himself to do business in Illinois because he was a named defendant in the case and forced to defend himself there. *Id*., at 7. Paul is focused on the relationship that was formed BEFORE the tort was committed in Illinois (and how it came to be). Jurisdiction is based upon Paul having committed a tort in Illinois by defaming the Plaintiffs. He doesn't see that it is tortious conduct aimed at the Plaintiffs in Illinois that is the basis for long-arm jurisdiction.

This is the "crux" of Paul's apparent misunderstanding. Paul does not believe that the hiring of a law firm for the provision of professional services is doing business. Paul (or his ghost-writer) thinks, or at least intimates, that legal services were not business, but perhaps were for fun, or just something that lawyers do gratuitously, and that said services do not constitute the "conducting of business" such that Paul could be sued for something which related to those services (whereby implicitly denying that a lawyer might make a living through the practice of law). While novel, these theories do not hold water. Under the standard outlined in *Calder v. Jones,* 465 U.S. 783 (1984), there are three requirements to be met for personal jurisdiction in the context of a foreign defendant facing allegations of tortious conduct as follows: 1) intentional conduct; 2) expressly aimed at the forum state; and 3) with the defendant's knowledge that the effects would be felt – that is, the plaintiff would be injured – in the forum state. *Tamburo, supra,* at 703, citing *Calder,* at 789-90. This Court must focus on what Paul did: He posted a defamatory review aimed at the Plaintiffs in Chicago. It was intentional, directed, and pointed squarely at the Plaintiffs' law practice.

Where a defendant targets or "expressly aims" their alleged conduct or publication at a specific state or location where they know the plaintiffs reside and would suffer the brunt of an injury, personal jurisdiction is supported. *Id*., at 704. Where a defendant acts from a point outside Illinois, where a defendant aims his tortious conduct at Illinois, the allegations of such conduct are sufficient to establish jurisdiction where *Calder* is utilized as the benchmark. Even where defamatory statements or publications are circulated more "diffusely" on the internet, where they were targeted at the plaintiffs living and conducting business in Illinois with the express goal of inflicting commercial and reputational harm in Illinois, are sufficient to satisfy *Calder's* "express-aiming" requirement which would then support personal jurisdiction.

In this case, Paul posted and then updated later, a review on the firm's Yelp page, which is found online when people search for an attorney on Yelp in Chicago. Especially insofar as Yelp was not the medium through which the parties connected or became acquainted, it is obvious that Paul searched online for the Plaintiff's name, in order to ascertain the existence of the Yelp account, and to post a review there. As such, given the fact that Paul's posting was done for the obvious purpose of encouraging others to not hire the Plaintiffs, his actions satisfy the long-arm statute, and specific jurisdiction is appropriate, because Paul defamed the Plaintiffs and tried to direct that defamation toward the Plaintiffs in Chicago, where it would be found, and felt. Paul's Motion should be denied.

### b. PAUL REGULARLY DOES BUSINESS IN ILLINOIS

By Paul's Motion, he suggests that he does not do business in Illinois and therefore the Court should agree that jurisdiction is lacking. However, Paul consistently hires attorneys in Illinois and the public records to which the Court can take judicial notice of, demonstrate that lawyers in Illinois have filed appearances for Paul in his legal matters – thereby suggesting that since they probably did not file appearances without some type of agreement through which they were paid to do so, that Paul probably and very likely hired them to do so. The list of lawyers that have filed appearances on behalf of Paul in Illinois matters that were based in Chicago, Illinois are as follows:

| Paul's Attorney | Appearance Filed | Case Number |
|---|---|---|
| 1. Margaret Lundahl | 8/2014 | 2014 CH 5650 |
| 2. Margaret Lundahl | 4/2017 | 2017 CH 3356 |
| 3. Stoltmann Law Offices PC[3] | 4/2017 | 2017 CH 3356 |
| 4. Chuhak & Tecson | 7/2008 | 08 P 335 |
| 5. Marderosian Law LLC[4] | 6/2011 | 11 CH 22779 |

---

[3] In March, 2018, the Stoltmann Law Office also advanced an appeal for Paul in that captioned case before the Illinois 1st Appellate District which is currently pending.
[4] This matter was also taken up on appeal under Illinois 1st Appellate District Case Number: 1-12-1842

| | | | |
|---|---|---|---|
| 6. | Margaret Lundahl | 7/2013 | 13 CH 17457 |
| 7. | Trivedi & Khan | 11/2013 | 13 CH 17457 |
| 8. | Steven S. Shonder | 10/2016 | 13 CH 17457 |
| 9. | Desiree Lauricella | 2/2017 | 13 CH 17457 |
| 10. | Querrey & Harrow | 3/2017 | 13 CH 17457 |
| 11. | Lawrence A Rosen | 5/2017 | 13 CH 17457 |

In Illinois, a court may acquire personal jurisdiction over a non-resident defendant by showing that the defendant is subject to long-arm statute or that the defendant was "doing business" in the State. *See, Unison Indus. Ltd. P'ship v. Lucas Indus. PLC,* 1994 WL 148718, •3 (N.D. Ill. 1994), citing *Asset Allocation and Mgmt Co v. Western Employers Ins. Co.*, 892 F.2d 566, 569 (7th Cir. 1989). Doing business in Illinois on a regular basis may authorize jurisdiction even where a plaintiff's cause of action does not arise from that business. *Id.,* citing *Asset Allocation* at 570. While it may be true that Paul lives in California, he litigates consistently in Illinois, and hires lawyers here – any of whom who could confirm their retention. That Paul sees these activities as insignificant does not validate his position. Hiring professionals in the forum state is "doing business" and Paul has consistently done so for many years. The Motion ought to be denied.

**III.  THE COURT HAS SUBJECT-MATTER JURISDICTION UNDER A DEFAMATION PER SE COMPLAINT BECAUSE DAMAGES ARE PRESUMED**

Paul argues that this Court lacks jurisdiction because federal jurisdiction is insufficiently supported by the pleadings. *See,* Motion at p. 14. This, especially in a defamation *per se* matter where damages are presumed, is an argument that lacks support. In evaluating a motion to dismiss for lack of subject-matter jurisdiction the Court accepts as true all well-pled allegations and draws all reasonable inferences in Plaintiffs' favor. *See, Cartwright v. Cooney,* 788 F.Supp.2d 744, 750 (N.D. Ill. 2011). Paul's Motion attacks the pleading and suggests that there is no way that Plaintiffs could ever prove damages over $75,000. This argument however, is unsupported. The diversity statute confers jurisdiction over "civil actions" that meet the statutory minimum amount in controversy, not over individual counts. *See, Herremans v. Carrera Designs, Inc.,* 157 F.3d 1118,

1121 (7th Cir. 1998). Where defamation *per se* was clearly established, the court can find liability and allow recovery, and the exact amount of said damages will be an evidentiary matter for the court to resolve. *See, Macklem v. Pearl*, 2011 WL 2200037, *4 (N.D. Ill. 2011). Furthermore, courts will accept the plaintiffs' good-faith allegations of the amount in controversy unless it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *See, Rexford Rand Corp. v. Ancel*, 58 F.3d 1215 (7th Cir. 1995). Where the Complaint adequately pleads the §1332(a) requirements, a court is well empowered to agree that it has jurisdiction. *Id*.

## IV. CONCLUSION

For the reasons stated herein, the Motion is insufficient for the grant of dismissal under either 12(b)(1) or 12(b)(6), and as such, the Defendant's requests should be denied.

Respectfully submitted,

LEVIN LAW LTD. AND ALISA LEVIN, *Plaintiffs*

By: /s/ *Alisa Levin*
      Counsel

/s/ *Charmaine Vivar*
      Counsel

| | |
|---|---|
| Charmaine L. Vivar | Alisa Levin - Levin Law, Ltd. |
| 155 N. Harbor Drive, Ste. 4701 | 2210 W. Chicago Ave. Ste. 1W |
| Chicago, IL 60601 | Chicago IL 60622 |
| C: 312.493.3638 | T. 312.720.0082 |

## CERTIFICATE OF SERVICE

I, Alisa M. Levin, an attorney, do state and affirm that I caused a copy of this Motion to be electronically filed with the CM/ECF District Court filing system and that a copy of the same shall be transmitted to all counsel and parties of record, as of the date of this filing.

By: /s/ *Alisa Levin*