IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALISA M. LEVIN and LEVIN LAW, LTD., | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) ) Case No. 18 C 1723 |
| PAUL ABRAMSON, | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Alisa Levin and her law firm Levin Law, Ltd. (collectively Levin) have sued Paul Abramson for defamation. Abramson has moved to dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, and failure to state a claim upon which relief may be granted. For the reasons stated below, the Court denies Abramson's motion.

### Facts

For purposes of the present motion, the Court takes the facts from the allegations in Levin's complaint.

Levin is a lawyer licensed in Illinois and based in Chicago. She concentrates her practice in commercial litigation and appellate work. Abramson resides in California. In October 2015, he contacted Levin seeking legal representation in a lawsuit pending in Illinois. He had another lawyer and was dissatisfied with her work, specifically in defending against a motion for summary judgment. Abramson hired Levin to do the necessary legal research and draft a brief that would be submitted under his existing

lawyer's name with her consent. Levin quoted Abramson an hourly rate of $315—to which he agreed—and an initial retainer of $4,000 against which fees and expenses would be charged, to which Abramson also agreed.

In late October 2015, Levin sent Abramson, by e-mail, a fee agreement that stated he would pay Levin on an hourly basis for all services rendered; he would pay her an initial retainer of $4,000 against which fees and expenses would be charged; and once the retainer was exhausted, Levin would issue invoices and would charge his credit card for amounts due, or would request replenishment of the retainer. Abramson paid the retainer and provided Levin with credit card information and authorization to charge his card accordingly.

Levin immediately began work on Abramson's case, specifically getting up to speed and performing legal research. As of November 1, 2015, Levin alleges, Abramson was aware that about $2,000 remained of the initial retainer and that the bulk of the primary work for which he had hired Levin remained to be done. Levin says that in early November, Abramson expanded the scope of her work to include additional motions. Levin performed all of this work and submitted her work product to Abramson and the attorney of record for their review. Abramson approved all of it before it was filed and told Levin that an attorney friend of his in California had also reviewed and approved the work she had done.

Levin billed Abramson for a total of 37.5 hours of her time for November 2015, and as a result Abramson owed Levin $9,167 over and above the initial retainer. Levin alleges that she charged Abramson's credit card for this amount, as provided in the fee agreement. In early December 2015, however, Abramson terminated Levin's services,

and she stopped working on the case.

Levin alleges that Abramson then "commenced a campaign against Levin . . . wherein he claimed erroneously that the firm's charges were fraudulent." Am. Compl. ¶ 47. He filed a complaint against her with the Chicago Bar Association (CBA) in December 2015. He then began calling Levin and hanging up on her, leaving "foul and obscene and upsetting voice-mail messages and telling others, including [the attorney representing him in the Illinois lawsuit], that he had been 'defrauded.'" *Id.* ¶ 48. Levin responded to the complaint, and the CBA ultimately declined to take action. Abramson then contacted the Illinois Attorney Registration and Disciplinary Commission and submitted a complaint against Levin and began calling the ARDC's investigator on a weekly basis to disparage her. Levin hired counsel and prepared multiple responses that she submitted to the ARDC. In the spring of 2016, Levin alleges, Abramson disputed the credit card charge with his bank and claimed it was fraudulent. As a result, Levin's credit card issuer debited the disputed funds from her account. There ensued a dispute resolution process, which Levin says was resolved in her favor, resulting in her receipt of the funds.

Levin alleges that in October 2016, the ARDC required her to submit to a deposition regarding Abramson's complaint. The next month, the ARDC concluded its investigation without taking action and closed its file. In the spring of 2017, Levin alleges, Abramson began "billing" her for $4,000 and sending invoices periodically through PayPal. When Levin ignored these, Abramson hired collection agencies, including one called Receivables Management Services, to attempt to collect the false invoices.

On March 22, 2017, Levin alleges, Abramson posted a review of Levin on the Yelp website under Levin's account page that she alleges was "false and malicious." *Id.* ¶ 62. Here is what the review says (Levin quotes it in her complaint):

> Craig's list legal predator – not your legal advocate
>
> Alissa Levin represents herself as a legal ghost writer expert on Craig's list. That should have been my first red flag. She is nothing more than a con artist who prays on people in legal trouble like yours truly. She was supposed to draft and file my motion for summary judgement as well as final reply brief for a budget of $4000. Instead she blew through the budget then quit when I refused to pay her supplemental bill of $9167 which she illegally charged to my credit card that later was recovered by my credit card company due to a fraudulent transaction. Her pleadings were also stricken by the court which made them worthless and she was not even aware of how to draft an affidavit that does not require a notarized signature. The ARDC later advised me never to hire an attorney off Craig's list and now I know why as those prowling it like Ms. Levin are only looking to take advantage of those already victimized by the legal system. You have been warned.

*Id.* ¶ 63. Levin posted an online response stating that the review had been written by a disgruntled former client whose ARDC complaint had been closed without any action being taken. Abramson responded by again complaining to the ARDC, this time accusing Levin of posting prohibited material about the representation on the Internet. She again hired counsel and responded, and ultimately the ARDC again closed its file.

In July 2017, Levin alleges, Abramson made changes to his Yelp review and republished it, which had the effect of driving it to the top of the list of reviews on Yelp, so that anyone looking up Levin's firm on Yelp would see Abramson's review. He also continued to send invoices to Levin, demanding payment of $4,000. Finally, in November 2017, Abramson caused a complaint to be made against Levin via the Better Business Bureau, e-mailing Levin to advise her of this.

Levin asserts claims against Abramson for defamation *per se* and for false light

4

invasion of privacy. As indicated earlier, Abramson has moved to dismiss for lack of subject matter jurisdiction, for lack of personal jurisdiction, and for failure to state a claim.

## Discussion

The Court will begin with the question of whether Levin's complaint states a claim upon which relief may be granted, as the appropriate understanding of the complaint is relevant to whether the Court has subject matter jurisdiction over the case.

**1.     Rule 12(b)(6) motion**

Abramson argues that the complaint is time-barred because Levin alleges she was first damaged in December 2015, when he filed the ARDC complaint, but she did not file suit until March 8, 2018, outside the one-year limitations period that governs defamation and invasion of privacy claims in Illinois. *See* 735 ILCS 5/13-201. He also contends that any claim based on the ARDC complaint is barred by the immunity established by Illinois Supreme Court rule for persons making complaints to the ARDC. *See* Ill. S. Ct. R. 775. He argues that his submission of his dispute to the CBA for fee dispute resolution is likewise privileged conduct for which he cannot be sued. And he contends that the Yelp complaint, specifically his use of the term "con artist," is non-actionable opinion.

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Sloan v. Am. Brain Tumor Ass'n*, 901 F.3d 891,

894 (7th Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).

In response to Abramson's second and third arguments, Levin says that she is not alleging that the ARDC and CBA complaints constitute actionable defamation but instead includes these matters in her complaint to explain background and context. She says that she "base[s] the tort claims on the Yelp reviews." Pls.' Resp. to Def.'s Mot. to Dismiss at 5; *see also id.* at 2 ("The Complaint does not detail the specific language of [Abramson's] communications to the ARDC and the CBA because those contacts are not the basis of the instant Complaint . . . ."). Thus the Court need not address Abramson's immunity/privilege defenses regarding the ARDC and CBA complaints.

With regard to Abramson's limitations defense, because Levin is basing her claims on the Yelp reviews, which were first published on March 22, 2017, there is no question that the claims are timely and not barred by the statute of limitations. Illinois follows the so-called "single publication rule," under which the statute of limitations for defamation or any tort related to a single publication begins to run when the material is first published (and not anew when it is republished), but this applies only to copies of "any one presentation to an audience." *See* 740 ILCS 165/1. Each new presentation of defamatory material to a different audience triggers liability for the particular publication. *See Blair v. Nev. Landing P'ship,* 369 Ill. App. 3d 318, 325, 859 N.E.2d 1188, 1194 (2006). Thus even if Abramson defamed Levin in a similar way to the ARDC and CBA earlier, his publication of the allegedly defamatory Yelp review was a separately actionable matter that started the one-year limitations period as of the date of its publication.

Abramson's last contention is that the Yelp review constitutes non-actionable

opinion. A statement is nonactionable if it is merely the expression of an opinion, as opposed to an assertion of fact, because "there is no such thing as a false idea" under the First Amendment. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974). But "[a] defamatory statement is constitutionally protected only if it cannot be reasonably interpreted as stating actual fact." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill. 2d 558, 581, 852 N.E.2d 825, 840 (2006); *see also Madison v. Frazier*, 539 F.3d 646, 654 (7th Cir. 2008). In determining whether a statement contains an assertion of fact, a court considers "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Madison*, 539 F.3d at 654.

In seeking dismissal, Abramson focuses on his use of the term "con artist," saying that this amounts to an opinion about Levin, not a statement of fact. Were that the only thing he said in the Yelp review, he might have a point, but there is far more to the review than that. Specifically, Abramson wrote that Levin "illegally charged [his] credit card $9167" and that his credit card company later recovered this amount as a "fraudulent transaction." Levin adequately alleges that these statements were false: her charging of his credit card was not illegal but rather was proper and authorized by their fee agreement; the transaction was anything but fraudulent because it represented amounts Abramson owed her under the fee agreement for services rendered; and that Abramson did not in fact recover the $9167. Levin has adequately alleged that the statements the Court just quoted were false statements of fact, not opinions or characterizations. The statements that Levin "illegally charged" his credit card and that this was a "fraudulent transaction" have readily understood meanings; the context in

7

which the statements appear signals that the terms have, and are intended to have, factual content; and they are sufficiently factual in nature to be susceptible of being verified as true or false.

For these reasons, the Court overrules Abramson's contention that Levin's complaint fails to state a claim.

2.  **Rule 12(b)(1) motion**

This case was filed in federal court based on diversity of citizenship. Abramson argues that Levin cannot show that there is at least $75,000 in controversy, because she does not allege any actual damages. Levin's complaint, however, adequately alleges that Abramson's statements were defamatory *per se*, because (perhaps among other things) they imputed an inability on her part to perform or a want of integrity in the discharge of the duties of her employment, *see Madison*, 539 F.3d at 653; they prejudiced her, or imputed lack of ability, in her profession, *see id.*; and they imputed the commission of a criminal offense ("illegally" and "fraudulently" charging Abramson's credit card), *see Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114, 121 (2006). Thus Levin is not required to allege or prove actual damages; damage is presumed on a claim of defamation *per se*. And the Court cannot say, at least at this juncture, that it appears "to a legal certainty" that the recoverable damages on Levin's two claims—including punitive damages, which are recoverable on claims of this type, *see, e.g., Neuros Co. v KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012)—will not exceed the $75,000 jurisdictional minimum. *See, e.g., Rexford Rand Corp. v. Ancel*, 58 F.3d 1215, (7th Cir. 1995) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S 283, 289 (1938)). The Court therefore accepts Levin's allegation of a greater damages amount,

which she appears to have made in good faith, and denies Abramson's motion to dismiss for lack of subject matter jurisdiction.

3.  **Rule 12(b)(2) motion**

Abramson has also moved to dismiss Levin's claims for lack of personal jurisdiction. When a defendant moves to dismiss a complaint for lack of personal jurisdiction under Rule 12(b)(2), "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Kipp v. Ski Enter. Corp. of Wis.*, 783 F.3d 695, 697 (7th Cir. 2015). Where, as in this case, a court is asked to determine personal jurisdiction without an evidentiary hearing, the plaintiff must establish a *prima facie* case for personal jurisdiction. *Id.* "In evaluating whether the *prima facie* standard has been satisfied, the plaintiff is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 387 (7th Cir. 2003).

When a federal court sits in diversity jurisdiction, it "must apply the personal jurisdiction rules of the state in which it sits." *Kipp*, 783 F.3d at 697. In Illinois, a court may "exercise jurisdiction on any basis permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c). In other words, Illinois law permits the exercise of jurisdiction "up to the limits of the due process clause of the Fourteenth Amendment." *Kipp*, 783 F.3d at 697. In that sense, federal due process and Illinois state-law requirements are indistinguishable. *State of Illinois v. Hemi Group LLC,* 622 F.3d 754, 757 (7th Cir. 2010).

There are two types of personal jurisdiction—specific and general. "[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the

9

very controversy that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). The exercise of specific personal jurisdiction "requires that the claims in the lawsuit arise from the defendants' contacts with the forum state." *Johnson v. Hartwell*, 690 F. App'x 412, 413 (7th Cir. 2017). For a court to exercise general personal jurisdiction, the defendants "must have had 'continuous and systematic' contacts with the forum state." *Id.* General jurisdiction gives a court the right to hear any claims asserted against a defendant regardless of whether they arise from the defendant's contacts with the state. *Goodyear Dunlop*, 564 U.S. at 919.

### a. General jurisdiction

Levin argues that Abramson, though a resident of California, regularly does business in Illinois by hiring Illinois attorneys to represent him in matters before Illinois courts. But general jurisdiction exists only if the defendant has "continuous and systematic" contacts with a state that are "sufficiently extensive and pervasive to approximate physical presence." *Felland v. Clifton*, 682 F.3d 665, 673 (7th Cir. 2011). This requires something more than periodically hiring Illinois attorneys. Levin does not contend that Abramson had regular contacts with Illinois other than the lawsuits or even that he regularly came to Illinois in connection with the lawsuits. Simply hiring Illinois attorneys to represent one on legal claims in Illinois does not constitute "doing business" in Illinois for purposes of personal jurisdiction. *See Longo v. AAA-Michigan*, 201 Ill. App. 3d 543, 550, 569 N.E.2d 927, 932 (1990). *See generally Goodyear Dunlop*, 564 U.S. at 924 ("For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile . . . .").

b.  **Specific jurisdiction**

A court may exercise specific personal jurisdiction over a defendant "where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities."  *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010).  In *Felland*, the Seventh Circuit distilled three requirements from *Calder v. Jones*, 465 U.S. 783 (1984), for determining whether conduct was "purposefully directed" at the forum state: (1) intentional conduct (or 'intentional and allegedly tortious' conduct); (2) expressly aimed at the forum state; (3) with the defendant's knowledge that the effects would be felt—that is, the plaintiff would be injured—in the forum state."  *Felland*, 682 F.3d at 674-75.

Under the Supreme Court's more recent decision in *Walden v. Fiore*, however, deliberately causing an injury to one the defendant knows to be a resident of a state is not enough, by itself, to subject the defendant to jurisdiction in that state.  "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the random, fortuitous, or attenuated contacts he makes by interacting with other persons affiliated with the State."  *Walden v. Fiore*, 571 U.S. 277, 286 (2014) (internal quotation marks omitted).  The defendant's relationship with the forum state "must arise out of contacts that the defendant himself creates with the forum State," *id.* at 284 (internal quotation marks omitted), and the contacts must be "with the forum State itself, not . . . with persons who reside there."  *Id.* at 285.

These requirements are met here.  In *Walden*, the defendant "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" the

11

forum state. *Id.* at 289. But the contrary is true here. Based on the allegations in the complaint, Abramson hired Illinois lawyers to represent him on lawsuits in Illinois; he reached out to and hired Levin, an Illinois-based lawyer, to perform legal work for him in connection with a lawsuit pending in the courts of this state; he made complaints to an Illinois bar association and to Illinois regulators to pursue grievances against Levin; he sent multiple invoices to her in Illinois; and he repeatedly reached out to her and to others in Illinois to voice his grievances. Given this background, along with Abramson's knowledge that Levin is an Illinois-based lawyer, it is reasonable to infer that when he posted on Yelp his critical and allegedly defamatory comments about her, he was targeting Illinois residents. It is also readily apparent that any injury to Levin was felt here in Illinois and that Abramson expected that would occur.

In sum, the Court concludes that Abramson purposefully availed himself of the privilege of conducting activities in Illinois and that the present dispute arose out of and relates to his contacts with this state. The exercise of personal jurisdiction over Abramson under these circumstances does not run afoul of "fair play and substantial justice." See *Hyatt Int'l Corp. v. Coco*, 302 F.3d 707, 713 (7th Cir. 2002). The Court therefore denies Abramson's motion to dismiss for lack of personal jurisdiction.

## Conclusion

For the reasons stated above, the Court denies defendant's motion to dismiss [dkt. no. 22]. Defendant is directed to file an answer to plaintiffs' amended complaint by no later than January 17, 2019. Each side's Rule 26(a)(1) disclosures are due by the same date. The case is set for a status hearing on January 23, 2019 at 9:30 a.m. for the purpose of setting a discovery and pretrial schedule and discussing the possibility of

12

settlement.


Date:  December 27, 2018				_____
						MATTHEW F. KENNELLY
						United States District Judge