UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ALISA M. LEVIN and LEVIN LAW, LTD., | ) ) | |
| | ) | |
| Plaintiffs, | ) | No. 18-cv-1723 |
| | ) | |
| v. | ) | Hon. Martha M. Pacold |
| | ) | |
| PAUL ABRAMSON, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This case is about a review and a response on Yelp.com. Plaintiffs Alisa M. Levin and Levin Law, Ltd. (collectively, "Levin"), sued Paul Abramson for defamation and false light invasion of privacy, based on Abramson's Yelp review of Levin Law. Levin also wrote a Yelp response, so Abramson counterclaimed for defamation, legal malpractice, and breach of fiduciary duty. Currently before the court are Levin's motion to dismiss the counterclaim [48], Levin's motion to strike Abramson's affirmative defenses [49], Levin's motion for summary judgment [50], and Abramson's cross-motion for summary judgment [80]. For the following reasons, the court grants in part and denies in part the motion to dismiss, grants in part and denies in part the motion to strike, and denies the cross-motions for summary judgment.

**Background**

On a motion to dismiss, a court looks to the well-pleaded facts in the complaint. *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). On a motion for summary judgment, the court draws from the parties' statements of material fact. *Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 704 (7th Cir. 2011) (citation omitted). The following background is derived from the parties' Statements of Undisputed Material Facts (Dkts. 51, 80 (Section IV), and 86) and the Counterclaim (Dkt. 45). As the court addresses each motion later in this opinion, it views the facts according to the relevant standard.[1] The court also assumes

---

[1] For purposes of the motion to dismiss, the court accepts all well-pleaded factual allegations in the counterclaim as true and views them in the light most favorable to Abramson. *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013); *Williams v. East-West Univ.*, No. 17-cv-07092, 2018 WL 4591863, at *1 (N.D. Ill. Sept. 25, 2018). For the cross-motions for summary judgment, the court views the facts in the record and

familiarity with Judge Kennelly's Memorandum Opinion and Order in this case, which reviewed the allegations of Levin's complaint and denied Abramson's motion to dismiss Levin's complaint. *See Levin v. Abramson*, No. 18-cv-01723, 2018 WL 6812657, at *1-2 (N.D. Ill. Dec. 27, 2018).

Plaintiff Alisa Levin (collectively with her law firm Levin Law Ltd., "Levin") is an attorney licensed in Illinois. (Dkt. 51, PSOF ¶ 1.)[2] Defendant Paul Abramson is a resident of California. (*Id.* ¶ 2.) In October 2015, Abramson hired Levin to assist a different attorney (whom Abramson had previously retained) with writing services in an Illinois lawsuit. (*Id.* ¶¶ 4, 7.) Abramson alleges that he hired Levin as a ghost writer, and her name was not to be included on any filings. (Dkt. 45 at 1.) Abramson paid Levin a $4,000 retainer and signed a written retainer agreement specifying that Levin would charge $315 an hour for her time. (Dkt. 51, PSOF ¶¶ 5, 8.) Among other things, the fee agreement specified: "If Client is on retainer, then in the event that Attorney requests replenishment of the Retainer, said funds must be deposited with Attorney within (21) days or unless an earlier deadline is provided by Attorney." (Dkt. 80-1 at 4.)

On December 2, Levin sent Abramson an invoice for 37.5 hours of her time, which resulted in fees $9,167 over and above the $4,000 retainer. Abramson responded the same day, disputing this amount. (Dkt. 80, DSOF ¶¶ 7-9.) Nonetheless, Levin charged Abramson's credit card $9,167 later that day. (*Id.* ¶ 10.) According to Levin, Abramson terminated Levin shortly after that by asking her to stop work in an email. (Dkt. 51, PSOF ¶ 10.)[3]

Abramson subsequently made complaints about this turn of events to the Chicago Bar Association and the ARDC. (*Id.* ¶ 20.) Levin represents that in spring 2017, the ARDC closed the investigation without taking any action. (Dkt. 50-1 at 4

---

inferences in the light most favorable to each nonmovant. *Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015).

[2] Citations to the parties' Local Rule 56.1 Statements of Fact are identified as follows: "PSOF" for Levin's Statement of Facts (Dkt. 51), "DSOF" for Abramson's Statement of Facts (Dkt. 80 § IV), and "Pl.'s Resp. DSOF" for Levin's response to Abramson's Statement of Facts (Dkt. 86). Abramson did not file a response to Levin's Statement of Facts and argues incorrectly that Levin failed to submit such a statement. (Dkt. 79 at 1-2.) Accordingly, the court deems Levin's facts admitted, unless they are specifically contradicted by Abramson's statement of undisputed facts, in which case the court notes a dispute of fact. *See Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000) (when a party fails to "properly respond to a movant's 56.1(a) statement . . . the movant's factual allegations are deemed admitted").

[3] In the PSOF, Levin states that Abramson terminated her on December 3. (Dkt. 51, PSOF ¶ 10.) However, as discussed below in connection with the parties' cross-motions for summary judgment, Levin also argues that December 2 emails show that Abramson asked Levin to stop work on December 2 and thus terminated Levin before she charged Abramson's card. Abramson, on the other hand, argues that he did not formally terminate Levin.

¶ 27.) As to the charge, Abramson initiated a chargeback dispute with his bank. (*Id.* ¶ 12.) The bank provisionally credited Abramson and debited the funds from Levin's account. (*Id.*) After an investigation, the funds were returned to Levin around June 2016. (*Id.* at 13.) In 2017, Abramson began invoicing Levin's firm, and had a collection agency make calls to Levin. (*Id.* ¶¶ 14-15.)

On March 22, 2017, Abramson, using the name "Van R.,"[4] published the following review on Levin Law's Chicago Yelp profile:

> Craig's list legal predator - not your legal advocate
>
> Alissa Levin represents herself as a legal ghost writer expert on Craig's list.. [*sic*] That should have been my first red flag. She is nothing more than a con artist who prays [*sic*] on people in legal trouble like yours truly. She was supposed to draft and file my motion for summary judgement as well as final reply brief for a budget of $4000. Instead she blew through the budget then quit when I refused to pay her supplemental bill of $9167 which she illegally charged to my credit card that later was recovered by my credit card company due to a fraudulent transaction. Her pleadings were also stricken by the court which made them worthless and she was not even aware of how to draft an affidavit that does not require a notarized signature. The ARDC later advised me never to hire an attorney off Craig's list and now I know why as those prowling it like Ms. Levin are only looking to take advantage of those already victimized by the legal system. You have been warned

(*Id.* ¶ 16; Dkt. 45 at 10.) Later that day, Levin posted the following Yelp response:

> This review is by an ex-client Paul Abramson who is still complaining about having to pay my firm in 2015 after suing every lawyer he has ever had. Mr. Abramson had been sued by his father (after years of litigation between the family) and when after doing an extensive amount of work he refused to pay me, Mr. Abramson's credit card was charged with Mr. Abramson's permission for services rendered as our retainer agreement authorized me in writing to do. Mr. Abramson, in his vast displeasure at having to actually pay his attorney for working on his behalf has engaged in a campaign of falsehoods that have been addressed by the credit card company (deciding successfully for my business when it reviewed the vast evidence of against [*sic*] Mr. Abramson and reinstating the charge on Mr. Abramson's credit card), the court's and the Chicago Bar Association and Attorney Registration and Disciplinary Commission all in my firm's favor, all of whom have reviewed and decided that

---

[4] Abramson's opposition to the motion to dismiss the counterclaim, and Abramson's attached affidavit, indicate that Abramson is the founder and label manager of Van Richter Records. (Dkt. 77 at 2; Dkt. 77-1 at 1 ¶ 1.) The opposition confirms that Abramson posted the review using the Van Richter Records Yelp.com account. (Dkt. 77 at 22.)

Mr. Abramson's defamatory statements and harassing allegations are worthless.

(Dkt. 45 at 10; Dkt. 80, DSOF ¶ 12.)[5] On July 27, 2017, Abramson updated his original review by removing the first line, "Craig's list legal predator - not your legal advocate." (Dkt. 51, PSOF ¶ 17.) Abramson also published a similar review on Google, and made a complaint to the Better Business Bureau. (*Id.* ¶¶ 18-19.)

Abramson alleges that contrary to the claim in Levin's Yelp response that he has sued "every lawyer he has ever had," he has "only sued attorney Barry Feinberg and Steven Marderosian." (Dkt. 45 at 3 ¶ 10(a).) Abramson supports this allegation with a letter from attorney Andrew Dunk, one of Abramson's lawyers whom Abramson has not sued. (*Id.*; Dkt. 45 at 13.) Abramson further alleges that there was no written signed retainer agreement and Abramson did not authorize Levin to charge his credit card. (*Id.* at 3 ¶ 10(b).) Abramson also alleges that his credit card company in fact ruled in his favor and never reinstated the charges. (*Id.* at 3 ¶ 10(c).) Finally, he alleges that neither a court nor the CBA nor the ARDC has found in Levin's favor or exonerated her in any way. (*Id.* at 3-4 ¶ 10(d).)

In March 2018, Levin brought this suit against Abramson. Abramson moved to dismiss; Judge Kennelly denied that motion. *See Levin*, 2018 WL 6812657, at *1. Abramson subsequently brought a counterclaim against Levin. (Dkt. 45.) Levin moved to dismiss the counterclaim (Dkt. 48), to strike Abramson's affirmative defenses (Dkt. 49), and for summary judgment on her claims (Dkt. 50). Abramson then filed a cross motion for summary judgment on Levin's claims. (Dkt. 80.) In August 2019, the case was reassigned to this judge.

The court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). Plaintiffs allege that they are citizens of Illinois and defendant is a citizen of California. (Dkt. 6 ¶ 6.) Judge Kennelly explained before that "the Court cannot say, at least at this juncture, that it appears 'to a legal certainty' that the recoverable damages on Levin's two claims—including punitive damages, which are recoverable on claims of this type, *see, e.g.*, *Neuros Co. v KTurbo, Inc.*, 698 F.3d 514, 519 (7th Cir. 2012)—will not exceed the $75,000 jurisdictional minimum." *Levin*, 2018 WL 6812657, at *4. The filings now before the court offer no reason for a different conclusion.

---

[5] Levin states that she deleted the response shortly after posting it. (*E.g.*, Dkt. 48 at 4; Dkt. 83 at 1 n.1, 7.) The court does not consider this allegation for purposes of Levin's motion to dismiss Abramson's counterclaim.

## Discussion

## I. Levin's Motion to Dismiss the Counterclaim

Levin moves to dismiss Abramson's counterclaim pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). The court first addresses whether Abramson's claims are time-barred, and then turns to whether Abramson has stated claims.

## A. Statute of Limitations

Levin argues that all three claims that Abramson asserts in his counterclaim—defamation, legal malpractice, and breach of fiduciary duty— are time-barred. Levin purports to advance this argument pursuant to Rule 12(b)(1). Rule 12(b)(1) allows a party to assert by motion the defense of "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). A statute of limitations does not affect this court's jurisdiction. *Leavell v. Kieffer*, 189 F.3d 492, 494 (7th Cir. 1999). Since a statute of limitations defense is an affirmative defense, this argument should be analyzed as a motion for judgment on the pleadings under Rule 12(c). *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012) (citing *Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009)). "The same standard applies to both motions to dismiss and motions for judgment on the pleadings." *Williams v. East-West Univ.*, No. 17-cv-07092, 2018 WL 4591863, at *1 (N.D. Ill. Sept. 25, 2018). On a Rule 12(b)(6) motion to dismiss a counterclaim, the court "accept[s] all well-pleaded allegations in the counterclaim as true and draw[s] all reasonable inferences in favor of the counterclaim plaintiff." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Abramson is not required to plead facts in his counterclaim "to anticipate and defeat a statute of limitations defense." *Haddad v. Am. Home Mortg. Servicing, Inc.*, No. 18-cv-00731, 2019 WL 1425835, at *6 (N.D. Ill. Mar. 29, 2019). However, if Abramson's allegations "reveal that relief is barred by the applicable statute of limitations, dismissal is appropriate." *Id.* (citing *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012)).

Levin argues that Abramson's defamation claim is time-barred. Under Illinois law,[6] "actions for slander, libel or for publication of matter violating the right of privacy, shall be commenced within one year next after the cause of action accrued." 735 ILCS 5/13-201. The parties agree that this provision provides the applicable limitations period. Abramson's defamation claim accrued on the date

---

[6] The parties have not argued in any of their motions that any substantive law applies other than that of Illinois; so, throughout this opinion, for any issues that require the application of substantive law, the court applies the substantive law of Illinois. *See Camp v. TNT Logistics Corp.*, 553 F.3d 502, 505 (7th Cir. 2009) ("Because none of the parties raised the choice of law issue, we apply the substantive law of Illinois, the forum state.").

that Levin published the allegedly defamatory material. *See Hukic v. Aurora Loan Services*, 588 F.3d 420, 435 (7th Cir. 2009). Levin published her Yelp response on March 22, 2017. (Dkt. 45 at 2.) Abramson filed his counterclaim on January 17, 2019. (Dkt. 45.) However, citing 735 ILCS 5/13-207, Abramson argues that his claim is not time-barred because Levin brought her claims before the end of the limitations period for his claim.

Section 13-207 provides, as relevant: "A defendant may plead a set-off or counterclaim barred by the statute of limitation, while held and owned by him or her, to any action, the cause of which was owned by the plaintiff or person under whom he or she claims, before such set-off or counterclaim was so barred, and not otherwise." 735 ILCS 5/13-207. "The plain language of paragraph 13–207 specifically states that the defendant in a lawsuit is permitted to bring a counterclaim that would otherwise be barred by the statute of limitations." *Bethlehem Steel Corp. v. Chicago E. Corp.*, 863 F.2d 508, 512 (7th Cir. 1988); *see also Oak Park Tr. & Sav. Bank v. Therkildsen*, 209 F.3d 648, 649 (7th Cir. 2000). "The essence of this somewhat cumbersome provision is that a defendant in a lawsuit may bring a counterclaim after the period authorized in the applicable statute of limitations has elapsed, as long as the plaintiff's claim arose before the cause of action brought as a counterclaim was barred." *Bethlehem Steel*, 863 F.2d at 511 (citing *Kuh v. Williams*, 13 Ill. App. 3d 588, 301 N.E.2d 151, 154 (1973)); *Barragan v. Casco Design Corp.*, 216 Ill. 2d 435, 445–46, 837 N.E.2d 16, 23–24 (2005); *Pape v. Byrd*, 145 Ill. 2d 13, 28, 582 N.E.2d 164, 171 (1991); 3 Ill. Prac., Civil Procedure Before Trial § 25:4 (Counterclaims) (2d ed.) ("[A]bsent an assignment of either claim, the defendant may assert a cause of action barred by the statute of limitations as a counterclaim if it was not barred before the plaintiff's cause of action arose. . . . [T]he critical date is not the date the plaintiff's claim was filed but the date he acquired the claim which, absent an assignment or transfer by operation of law, is the date it accrued.") (footnotes omitted); *Oak Brook Hotel Co. v. Teachers Ins. & Annuity*, No. 91-cv-06208, 1992 WL 281242, at *2 (N.D. Ill. Oct. 5, 1992).

Abramson's argument is incorrect to focus on the date when Levin brought her claims. The date that matters is the date when Levin's claims accrued, not the date when Levin filed the claims. The question is whether Levin's claims accrued before Abramson's counterclaim became barred; if so, Section 13-207 saves the counterclaim. Considering the date when Levin's claims accrued, Abramson's defamation claim is timely. Levin's claims accrued on the date that Abramson published his Yelp review, March 22, 2017. Abramson's defamation claim accrued on the date that Levin published her Yelp response—also March 22, 2017. Abramson's defamation claim became barred a year after it accrued, and thus was not barred before Levin's cause of action arose. Accordingly, based on the pleadings, Abramson's defamation claim is not time-barred.

Levin also argues that Abramson's counterclaims for legal malpractice and breach of fiduciary duty are time-barred. The parties agree that these claims are subject to a two-year statute of limitations pursuant to 735 ILCS 5/13-214.3(b), which provides: "An action for damages based on tort, contract, or otherwise (i) against an attorney arising out of an act or omission in the performance of professional services . . . must be commenced within 2 years from the time the person bringing the action knew or reasonably should have known of the injury for which damages are sought." Once again, Abramson argues that Section 13-207 saves his claims. Section 13-207 saves Abramson's legal malpractice and breach of fiduciary duty claims if Levin's claims arose before Abramson's claims became barred, i.e., if Levin's claims arose before the end of the applicable limitations period for Abramson's claims. As discussed above, Levin's claims accrued on the date that Abramson published his Yelp review, March 22, 2017. The question is whether the limitations period for Abramson's legal malpractice and breach of fiduciary duty claims extended past March 22, 2017. Put another way, the question is whether Abramson's claims accrued more than two years before March 22, 2017.

According to Levin, both of Abramson's claims arise out of her provision of legal services, which ceased when her representation ended: December 3, 2015. Abramson argues to the contrary that his legal malpractice claim accrued on March 18, 2016, the date when he first discovered Levin's alleged incompetence. According to Abramson, on that date a court struck filings prepared by Levin from the record because they violated the Illinois Uniform Mediation Act. (Dkt. 77-1.) In addition, he argues that his breach of fiduciary duty claim accrued on March 22, 2017, since he alleges that Levin violated her professional responsibilities in her Yelp response that was published on that day. Abramson filed his counterclaim on January 17, 2019. If Abramson is correct that his breach of fiduciary duty claim accrued on March 22, 2017, his breach of fiduciary duty claim was brought within the two-year statute of limitations and is timely even without Section 13-207.

In any event, the court need not resolve the dispute over when Abramson's claims arose or determine whether the dispute is susceptible to resolution on the pleadings. *See Brooks v. Ross*, 578 F.3d 574, 579 (7th Cir. 2009) (dismissal on statute of limitations grounds appropriate where the "relevant dates are set forth unambiguously in the complaint."); *Theriot v. Captain James Sprinkle, Inc.*, 30 F.3d 136 (Table), 1994 WL 287392, at *1 (7th Cir. 1994) ("Dismissal will be appropriate, however, only if the allegations of the complaint, liberally construed, would not permit the plaintiff to avoid the limitations bar."). Even if Levin were correct that Abramson's claims arose by December 3, 2015, the two-year limitations period would have extended past March 22, 2017 (when Levin's claims arose), and Section 13-207 would save Abramson's claims. Accordingly, the court will not dismiss Abramson's legal malpractice and breach of fiduciary duty claims as time-barred.

## B. Failure to State a Claim

In addition, Levin argues that Abramson has failed to state claims under Rule 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, a counterclaim must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when the claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, the court accepts all well-pleaded factual allegations as true and views them in the light most favorable to the non-moving party. *Lavalais*, 734 F.3d at 632. On the other hand, "[t]he complaint must do more than recite the elements of a cause of action in a conclusory fashion." *Roberts*, 817 F.3d at 565 (citing *Iqbal*, 556 U.S. at 678).

### 1. Defamation Per Se (Count I)

Levin moves to dismiss Count I of Abramson's counterclaim, defamation per se based on Levin's March 22, 2017 Yelp posting (in response to Abramson's Yelp review of Levin). Count I of the counterclaim identifies four specific statements in Levin's Yelp response posting, all of which Abramson alleges were false and defamatory:

1. that Abramson sued "every lawyer he has ever had";

2. that "Mr. Abramson's credit card was charged with Mr. Abramson's permission for services rendered as our retainer agreement authorized me in writing to do";

3. that Abramson "has engaged in a campaign of falsehoods that have been addressed by the credit card company (deciding successfully for my business when it reviewed the vast evidence of against [*sic*] Mr. Abramson and reinstating the charge on Mr. Abramson's credit card)"; and

4. "the court's [*sic*] and the Chicago Bar Association and Attorney Registration and Disciplinary Commission [sic] all in my firm's favor, all of whom have reviewed and decided that Mr. Abramson's defamatory statements and harassing allegations are worthless."

(Dkt. 45 ¶ 10.) Levin moves to dismiss Count I. (Dkt. 48 at 2-7.) Abramson responds that he has stated a claim for defamation per se. (Dkt. 77 at 10-16.) Although Abramson's counterclaim expressly labels Count I "defamation per se" (Dkt. 45 at 2), in his response to the motion to dismiss, Abramson also contends in the alternative that he has stated a claim for defamation per quod (Dkt. 77 at 15-16).

Levin appears to make three arguments: that the four statements are true; that the statements do not fall into the recognized categories of defamation per se; and that the counterclaim does not sufficiently allege damages. (Dkt. 48 at 2-7.)

"To state a claim for defamation under Illinois law, a plaintiff must allege that 'the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that [the] publication caused damages.'" *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Ass'n*, 922 F.3d 827, 831 (7th Cir. 2019) (quoting *Green v. Rogers*, 234 Ill. 2d 478, 491, 917 N.E.2d 450 (2009)). "Illinois recognizes two types of defamation: defamation *per se* and defamation *per quod.*" *Giant Screen Sports v. Canadian Imperial Bank Of Commerce*, 553 F.3d 527, 532 (7th Cir. 2009). "If a statement's 'defamatory character is obvious and apparent on its face,' it is considered defamation *per se*, with the law then presuming damages." *Bd. of Forensic Document Examiners*, 922 F.3d at 831–32 (quoting *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114 (2006)). Defamation per quod "requires a plaintiff to show that the false statements caused him harm." *Pippen v. NBCUniversal Media, LLC*, 734 F.3d 610, 613 (7th Cir. 2013); *see also Madison v. Frazier*, 539 F.3d 646, 653 (7th Cir. 2008) (defamation per quod "'requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity'") (quoting *Myers v. Levy*, 348 Ill. App. 3d 906, 808 N.E.2d 1139, 1147 (2004)).

"Illinois recognizes five categories of statements that are considered defamatory *per se* . . . ." *Bd. of Forensic Document Examiners*, 922 F.3d at 832. Two of those categories are relevant here: "statements 'imputing an inability to perform or want of integrity in the discharge of duties of office or employment' and statements that 'prejudice a party, or impute lack of ability, in his or her trade.'" *Id.* (quoting *Van Horne v. Muller*, 185 Ill. 2d 299, 307, 705 N.E.2d 898 (1998)).

"Although a statement may fit into one of these categories, this fact, standing alone, 'has no bearing on whether the alleged defamatory statement is actionable,' because certain factors may render defamatory statements non-actionable as a matter of law." *Giant Screen Sports*, 553 F.3d at 532 (quoting *Hopewell v. Vitullo*, 299 Ill. App. 3d 513, 701 N.E.2d 99, 102 (1998)). "For example, . . . if a defendant's statements are reasonably capable of an innocent, nondefamatory construction, a plaintiff cannot maintain action for defamation *per se*." *Id.*[7] "A number of common law privileges and defenses exist that may shield a defendant from liability for making an otherwise defamatory statement." *Republic Tobacco Co. v. N. Atl. Trading Co.*, 381 F.3d 717, 727 (7th Cir. 2004). For example, "substantial truth is a

---

[7] The parties occasionally cite the innocent construction principle (*e.g.*, Dkt. 48 at 3), but their arguments do not turn on it and the court need not address it.

complete defense to an allegation of defamation." *Id.* (citing *Pope v. Chronicle Publ'g Co.*, 95 F.3d 607, 613 (7th Cir. 1996)).

The court turns to Levin's three arguments in light of these standards. Levin first argues that the four statements are true. This argument is not appropriate for disposition on a motion to dismiss. On a motion to dismiss, the court views the facts as alleged in Abramson's counterclaim in the light most favorable to Abramson. Abramson has plausibly alleged that Levin made false statements in her Yelp response. For example, while Levin stated that Abramson sued "every lawyer he has ever had," he alleges that he has actually "only sued attorney Barry Feinberg and Steven Marderosian," attaching a letter from at least one lawyer he has hired and not sued. (Dkt. 45 at 3, 13.) While Levin asserts that her statements were substantially true, this is an affirmative defense "better suited for a motion for summary judgment." *Tamburo v. Estate of Dworkin*, No. 04-cv-03317, 2011 WL 13315233, at *3 (N.D. Ill. Sept. 21, 2011); *see also Doctor's Data, Inc. v. Barrett*, 170 F. Supp. 3d 1087, 1103 (N.D. Ill. 2016) (noting that "substantial truth" is an affirmative defense to defamation, while plaintiffs have the burden of pleading falsity) (citing *Kapotas v. Better Gov't Ass'n*, 2015 IL App (1st) 140534, ¶ 34). "A plaintiff may be able to demonstrate, for example, that a statement is technically false in some way, meeting its burden of establishing that element of its case. In Illinois, a defendant may then defeat the claim by showing that the statement, although not technically true in every respect, was substantially true." *Glob. Relief Found., Inc. v. New York Times Co.*, 390 F.3d 973, 982 (7th Cir. 2004). The court takes no view of the ultimate merits, but at the pleading stage, Abramson has adequately alleged that Levin's statements are "technically false in some way." *Id.*

Levin also argues that the statements do not fall into the categories of defamation per se recognized under Illinois law. As noted above, "Illinois recognizes five categories of statements that are considered defamatory *per se* . . . ." *Bd. of Forensic Document Examiners*, 922 F.3d at 832. The parties do not clearly develop arguments in this vein, but as best the court can tell, two of the five categories are relevant here: "statements 'imputing an inability to perform or want of integrity in the discharge of duties of office or employment' and statements that 'prejudice a party, or impute lack of ability, in his or her trade.'" *Id.* (quoting *Van Horne v. Muller*, 185 Ill. 2d 299, 307, 705 N.E.2d 898 (1998)). These two categories often appear third and fourth in the list of categories as stated by Illinois courts and the Seventh Circuit. *E.g.*, *Cody v. Harris*, 409 F.3d 853, 857 (7th Cir. 2005) (citing *Bryson v. News Am. Publ'ns, Inc.*, 174 Ill. 2d 77, 672 N.E.2d 1207, 1214-15 (1996).)

"Statements that have been deemed defamatory *per se* by Illinois courts under the third and/or fourth categories have always been related to job performance; to succeed, the plaintiff must have been accused of lacking *ability in his trade* or doing something bad *in the course of carrying out his job*." *Cody*, 409 F.3d at 857 (emphases in original) (discussing Illinois cases); *see also Pippen*, 734

F.3d at 613 (plaintiff "must show that he was falsely accused of lacking ability in his trade or of doing something bad while performing his job") (citing *Cody*, 409 F.3d at 857–58); *Madison*, 539 F.3d at 656 ("statements deemed to be defamatory *per se* in Illinois under these categories have been related to job performance, as opposed to attacks related to personal integrity and character") (citing *Cody*, 409 F.3d at 856-57).

For example, statements that "depicted [a] company as one that shirked its contractual obligations," such that "a reader might reasonably think twice about doing business with the company," are defamatory per se. *Pippen*, 734 F.3d at 613 (discussing *Giant Screen Sports*, 553 F.3d 527); *Giant Screen Sports*, 553 F.3d at 533-34 (statements that "in essence, Giant Screen's contractual word to meet an obligation is meaningless" and to the effect "that Giant Screen had purposely disregarded payments it was legally obligated to make" were defamatory per se; "[t]he natural and obvious response of anyone contemplating entering an agreement with Giant Screen, upon being told that Giant Screen had either refused or failed to pay a legal obligation, is to not transact with Giant Screen, but take his business elsewhere").

"Conversely, attacks related to personal integrity and character have not been deemed defamatory *per se*." *Cody*, 409 F.3d at 858 (discussing cases). "Sometimes personal and professional ability or integrity are linked. . . . When the subject of the false statements is employed in an occupation (schoolteacher for example) that requires certain personal traits, such as trustworthiness, accusations of being a scam artist or an inveterate liar could lead to unemployment." *Pippen*, 734 F.3d at 613 (citing *Kumaran v. Brotman*, 247 Ill. App. 3d 216, 617 N.E.2d 191 (1993)); *Madison*, 539 F.3d at 656 ("[S]ometimes personal integrity is so intertwined with job skills, that an attack upon it could constitute defamation *per se*.") (citing *Kumaran*); *Cody*, 409 F.3d at 858. When that is not the case, however, there is no defamation *per se*. *Cody*, 409 F.3d at 858 ("We see no reason to believe that managing the sales department of a radio station requires a degree of integrity above and beyond that required for any job."). *Cody* acknowledged that statements implying that the plaintiff "has a bad temper, is unable to control his anger, and lacks the integrity and judgment to resist getting revenge in an immature and vicious manner . . . suggest that Cody lacks certain qualities desirable in an employee, and the accusations might indeed make it harder for Cody to get a job. But the increased difficulty in finding employment would be due to Cody's perceived bad character traits, not because of his perceived inability to do the job." *Id.*

The court considers the four statements against these standards, viewing the allegations in the light most favorable to Abramson, as required at the pleading stage. The statements indicate, among other things, that Abramson sued "every lawyer he has ever had," that in the retainer agreement Abramson authorized Levin to charge his credit card, that Abramson "has engaged in a campaign of falsehoods" that the credit card company addressed by "reinstating the charge on

11

Mr. Abramson's credit card," and that the courts, the Chicago Bar Association, and the ARDC found in Levin's favor and "reviewed and decided that Mr. Abramson's defamatory statements and harassing allegations are worthless." These allegations portray Abramson as suing former attorneys and shirking contractual obligations to attorneys, such that an attorney might avoid doing business with him. *See Pippen*, 734 F.3d at 613 (discussing *Giant Screen Sports*, 553 F.3d 527); *Giant Screen Sports*, 553 F.3d at 533-34.

There is a question whether the statements are "related to job performance," i.e., are accusations of "lacking *ability in his trade* or doing something bad *in the course of carrying out his job*," as opposed to "attacks related to personal integrity and character." *Cody*, 409 F.3d at 857-58; *see also Pippen*, 734 F.3d at 613; *Madison*, 539 F.3d at 656. However, on a motion to dismiss, the court accepts all well-pleaded factual allegations of the counterclaim and draws all reasonable inferences in Abramson's favor; and the court considers the counterclaim, documents attached to the counterclaim, documents that are critical to the counterclaim and referred to in it, information that is subject to proper judicial notice, and additional facts set forth in Abramson's opposition to the motion to dismiss, to the extent those facts are consistent with the pleadings. *See Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Mercola v. Abdou*, No. 14-cv-08170, 2015 WL 3545414, at *1 (N.D. Ill. June 5, 2015) (quoting *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013); *Larkin v. Bd. of Educ. of City of Chicago*, No. 17-cv-09298, 2020 WL 1904087, at *1–2 (N.D. Ill. Apr. 17, 2020).

Whether the statements could prejudice Abramson in his profession or relate to his job performance is not apparent on the face of the counterclaim. The only allegation regarding damages in the counterclaim is that the statements "caused [Abramson] damages by publicly disclosing the fact that [Abramson] hired another attorney to assist his attorney of record in another matter when [Abramson] did not want anyone – especially the opposing parties and their counsel – [*sic*] of any such legal consultation and/or assistance." (Dkt. 45 at ¶ 11.) The counterclaim also makes clear that the underlying case was between Abramson and his father. (Dkt. 45 at ¶ 13.) Neither these allegations nor the rest of the counterclaim explain what Abramson's profession is, how Levin's statements could have affected Abramson in his profession, or whether Abramson's retention of Levin related to his job (or whether it matters whether the retention related to his job).

However, Exhibit A to the counterclaim (the Yelp review and response) appears to indicate that Abramson posted the Yelp review under the username "Van R." (Dkt. 45 at 10.) In addition, Abramson's opposition to the motion to dismiss, and Abramson's attached affidavit, indicate that Abramson is the founder and label manager of Van Richter Records. (Dkt. 77 at 2; Dkt. 77-1 at 1 ¶ 1.) The opposition confirms that Abramson posted the review using the Van Richter Records Yelp.com account. (Dkt. 77 at 22.) According to the opposition, the

statements "will make it difficult for Defendant Abramson to hire a lawyer, future lawyers may require an increased rate because they believe Defendant Abramson to be a greater-risk client as well as a decrease in Yelp.com followers to his business Van Richter Records which translates to monetary losses such as loss in future clientele." (Dkt. 77 at 12.)  The opposition also claims damages based on "a loss of potential clients and customers of Van Richter Records being insecure in their relationship with Defendant Abramson knowing about such private legal affairs and dysfunctional family matters."  (*Id.* at 21.)  Abramson's affidavit points to Levin's statements that "I have sued every lawyer I have ever had" and that "I had been sued by my father and that there had been years of litigation between my family and the credit card co. ruled in her favor" (Dkt. 77-1 at 3 ¶ 16); states that "[a]s a result of Ms. Levin's post, I have suffered reputational damage in the form of a loss of potential clientele to Van Richtor [*sic*] Records as a result of Ms. Levin's untruthful and confidential statements and will continue to do so as well as prejudiced in my father's lawsuit" (Dkt. 77-1 at 3 ¶ 17); continues that "[s]ince Levin's retaliatory Yelp post I have been unable to retain new Counsel of record in the lawsuit against me from my estranged father" and alleges consequent difficulties in appearing in the case in Illinois (Dkt. 77-1 at 3 ¶ 18); and alleges that "I believe Levin's negative Yelp post against me personally has not only prejudiced me in the lawsuit against me by my estranged father but has cost Van Richter Records to lose business" (Dkt. 77-1 at 3 ¶ 19).

It is not clear how any prejudice in the lawsuit amounts to prejudice in Abramson's trade.  There are arguments that Levin's statements relate to personal traits as opposed to professional ones, and that Abramson's occupation as the founder and label manager of Van Richter Records requires no special degree of integrity compared to other jobs.  *Cody*, 409 F.3d at 858 ("We see no reason to believe that managing the sales department of a radio station requires a degree of integrity above and beyond that required for any job.").  Moreover, the statements do not accuse Abramson of misconduct on the job.  *Id.*  On the other hand, viewing the counterclaim's allegations in the light most favorable to Abramson, as required at this stage, it is plausible that, especially in combination, the statements—which alleged litigiousness against attorneys, disregard of the payment terms of the retainer agreement, falsehoods addressed by the credit card company, and adverse decisions by the courts, the CBA, and the ARDC—could have prejudiced Abramson as a business owner.  Thus, the court declines to dismiss the claim.  The court expresses no view on the ultimate merits of the claim.

Finally, Abramson also contends that Levin's response accused him of "swearing falsely," and that by statute Illinois has recognized this category as an additional category of defamation per se.  740 ILCS 145/2, part of the Illinois Slander and Libel Act, 740 ILCS 145/1 *et seq.*[8]  *See Fried v. Jacobson*, 99 Ill. 2d 24,

---

[8] 740 ILCS 145/2 provides: "It shall be deemed slander, and shall be actionable, to charge any person with swearing falsely, or with having sworn falsely, or for using, uttering or

27, 457 N.E.2d 392, 394 (1983) ("'An Act to revise the law in relation to libel and slander' (Ill.Rev.Stat.1977, ch. 126, par. 1 et seq.) enlarged the classifications enumerated above by providing that false accusations of . . . false swearing are actionable as a matter of law."); *but cf. Muzikowski v. Paramount Pictures Corp.*, 477 F.3d 899, 904 (7th Cir. 2007) ("In order to prove defamation *per se*, a plaintiff must show that her claim fits into one of the five categories summarized in *Tuite, supra*.") (citing *Tuite*, 224 Ill. 2d at 501, 866 N.E.2d at 121, and *Bryson*, 174 Ill. 2d 77, 672 N.E.2d 1207, 1214–15 (1996)). Levin does not provide any authority suggesting that this provision is inapplicable here.

The contours of this "false swearing" category are not immediately apparent, but it covers statements regardless of "whether the words be spoken in conversation of, and concerning a judicial proceeding or not." 740 ILCS 145/2. And again, Levin does not provide any authority suggesting this provision is inapplicable. Levin's Yelp response references a "campaign of falsehoods" addressed by the courts, the Chicago Bar Association, and the Attorney Registration and Disciplinary Commission, suggesting that Abramson may have deliberately lied during legal proceedings. Drawing all inferences in his favor, Abramson has plausibly alleged at this stage that Levin's Yelp response accuses him of "false swearing under oath." *Cozzi v. Pepsi-Cola Gen. Bottlers, Inc.*, No. 96-cv-07228, 1997 WL 312048, at *4 (N.D. Ill. June 6, 1997). This provides an independent reason not to dismiss Abramson's claim.

Because the claim for defamation per se survives the motion to dismiss, the court need not address Levin's argument that Abramson has not sufficiently alleged damages or Abramson's argument that he has stated a claim for defamation per quod. *Bd. of Forensic Document Examiners*, 922 F.3d at 831–32 ("If a statement's 'defamatory character is obvious and apparent on its face,' it is considered defamation *per se*, with the law then presuming damages.") (quoting *Tuite v. Corbitt*, 224 Ill. 2d 490, 501, 866 N.E.2d 114 (2006)); *Pippen*, 734 F.3d at 613 (defamation per quod "requires a plaintiff to show that the false statements caused him harm."); *Madison*, 539 F.3d at 653 (defamation per quod "'requires the plaintiff to allege both extrinsic facts to establish that the statement is defamatory and special damages with particularity'") (quoting *Myers v. Levy*, 348 Ill. App. 3d 906, 808 N.E.2d 1139, 1147 (2004)).

## 2. Legal Malpractice (Count 2) and Breach of Fiduciary Duty (Count 3)

Abramson also advances claims for legal malpractice (Count 2) and breach of fiduciary duty (Count 3).

---

publishing words of, to or concerning any person, which, in their common acceptation, amount to such charge, whether the words be spoken in conversation of, and concerning a judicial proceeding or not."

With respect to the malpractice claim (Count 2), Abramson first alleges that Levin had a "duty to maintain [his] confidentiality regarding the fact that he was seeking legal assistance," which she breached by "publishing this private and confidential information in a public forum (YELP)." (Dkt. 45 ¶¶ 14, 16.) Second, he alleges that Levin breached her "duty to perform legal work competently and not below the standard of care in the community" by "preparing woefully inadequate pleadings which were stricken by the court." (*Id.* ¶¶ 15, 17.)

Abramson also brings a claim for breach of fiduciary duty (Count 3), again citing Levin's duty of confidentiality in connection with the legal work she performed for him. (*Id.* ¶¶ 23-29.)

At the outset, under Illinois law, "Despite the fact that actions for legal malpractice and breach of fiduciary duty are conceptually distinct, '"when * * * the same operative facts support actions for legal malpractice and breach of fiduciary [duty] resulting in the same injury to the client, the actions are identical and the later should be dismissed as duplicative.'" *Nettleton v. Stogsdill*, 387 Ill. App. 3d 743, 760, 899 N.E.2d 1252, 1267 (2008) (quoting *Majumdar v. Lurie*, 274 Ill. App. 3d 267, 273–74, 653 N.E.2d 915 (1995); *see also Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 791, 767 N.E.2d 470, 476–77 (2002); *Calhoun v. Rane*, 234 Ill. App. 3d 90, 95 (1992); *Beringer v. Standard Parking O'HARE Joint Venture*, No. 07-cv-05027, 2008 WL 4890501, at *5 (N.D. Ill. Nov. 12, 2008). Abramson argues that his claims are not duplicative and clarifies that his legal malpractice claim is based on Levin's allegedly incompetent filings, rather than her alleged breach of a duty of confidentiality. (Dkt. 77 at 21-22.) The court limits its analysis of Abramson's legal malpractice claim accordingly.

The elements of a legal malpractice claim in Illinois are "'(1) the existence of an attorney-client relationship that establishes a duty on the part of the attorney, (2) a negligent act or omission constituting a breach of that duty, (3) proximate cause of injury, and (4) actual damages.'" *West Bend Mut. Ins. Co. v. Schumacher*, 844 F.3d 670, 676 (7th Cir. 2016) (quoting *Sexton v. Smith*, 112 Ill. 2d 187, 492 N.E.2d 1284, 1286–87 (1986)). Illinois follows a "case-within-a-case model." *West Bend*, 844 F.3d at 676. There is no legal malpractice "unless counsel's negligence has resulted in the loss of an underlying cause of action, or the loss of a meritorious defense if the attorney was defending in the underlying suit." *Id.* (quoting *Nelson v. Quarles & Brady, LLP*, 2013 IL App (1st) 123122, ¶ 28, 997 N.E.2d 872, 880 (Ill. App. Ct. 2013)). "[I]n assessing the sufficiency of a complaint of legal malpractice," courts "must focus on the underlying claim." *West Bend*, 844 F.3d at 676.

Abramson must "set forth a plausible statement not only that a breach of duty occurred but that the breach caused [him] to lose a valid claim or defense in the underlying action and that, absent that loss, the underlying claim 'would have been successful.'" *Id.* (quoting *Fabricare Equip. Credit Corp. v. Bell, Boyd & Lloyd*, 328 Ill. App. 3d 784, 767 N.E.2d 470, 474 (2002)). In *West Bend*, the plaintiff

15

alleged that it "'was forced to accept a disadvantageous position which greatly compromised its ability to defend the claim,'" and lost "'valuable factual and legal defenses that would have eliminated or substantially reduced any liability . . . .'" 844 F.3d at 677–78 (quoting complaint) (emphases omitted). The Seventh Circuit held that these were "conclusory assertions" that "certainly d[id] not set forth a plausible description of a lost defense that, absent [the attorney]'s alleged neglect, would have assured [the plaintiff's] success on the underlying claim." *Id.* (citing *Iqbal*, 556 U.S. at 678–79).

Abramson's sole allegation about any loss in an underlying cause of action is that Levin's pleadings were "stricken by the court." (Dkt. 45 at 5 ¶ 17.) In his brief, Abramson explains that Levin's motion for summary judgment brief and accompanying affidavit "were stricken for including private information from a pretrial conference in violation of the Illinois Uniform Mediation Act." (Dkt. 77 at 3.) He also represents in the accompanying declaration that because the court struck these documents, he lost the lawsuit and was assessed $100,000 in compensatory damages and $1,000,000 in punitive damages. (*Id.*, Dkt. 77-1 at 3 ¶ 8.) He attaches an order from the Circuit Court of Cook County, in which the court granted a motion to strike "for the reasons stated in open Court." (Dkt. 77-1 at 32.) In the order, the court also granted leave for the parties to file amended summary judgment motions, and admonished Abramson not to file further pro se filings. (*Id.*) Abramson also represents that since Levin's Yelp response, he was "unable to retain new Counsel of record" in the suit between him and his father. (*Id.* at 3 ¶ 18.) The court considers these details to the extent they are consistent with the pleadings. *See Geinosky*, 675 F.3d 743, 745 n.1 (7th Cir. 2012); *Larkin*, 2020 WL 1904087, at *1–2.

Even considering the additional details in Abramson's brief and declaration, these allegations are insufficient.[9] Abramson does not allege anything about the substance of the case, and without context, the fact that a court struck documents drafted by Levin does not support a plausible inference that Levin caused Abramson to lose "actual, specific, meritorious defenses." *West Bend*, 844 F.3d at 679. While Abramson alleges that he lost the case and judgment was entered against him, he does not explain how he lost the case or why Levin's actions caused him to lose. Nor does he explain how he "would have prevailed on the underlying claim in the absence of [Levin's] missteps." *Id.* Since Abramson has not even made the conclusory allegations that the Seventh Circuit deemed insufficient in *West*

---

[9] Abramson attaches a transcript of a court ruling on what appears to be the motion to strike as an exhibit to his cross-motion for summary judgment. (*See* Dkt. 80-1 at 23.) Abramson does not cite this transcript in his opposition brief to the motion to dismiss. Even if the court could consider this transcript for purposes of determining the sufficiency of the counterclaim allegations, it too does not provide enough context to adequately support Abramson's claim.

*Bend*, the court dismisses the claim for legal malpractice (Count II) without prejudice to repleading.

This leaves Abramson's claim for breach of fiduciary duty. The elements of a claim for breach of fiduciary duty in Illinois are (1) the existence of a fiduciary duty; (2) a breach of that fiduciary duty; and (3) an injury that was proximately caused by the breach. *Lawlor v. N. Am. Corp. of Illinois*, 2012 IL 112530, ¶ 69, 983 N.E.2d 414, 433; *see also Pippen v. Pedersen & Houpt*, 2013 IL App (1st) 111371, ¶ 22, 986 N.E.2d 697, 704 (citing *Neade v. Portes*, 193 Ill. 2d 433, 444, 739 N.E.2d 496 (2000)). Lawyers owe their clients the fiduciary duty of confidentiality. Rule 1.6(a) of the Illinois Rules of Professional Conduct states in relevant part that "[a] lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent . . . ," or another exception described in the rule applies. This rule "encompasses . . . the attorney's fiduciary duty to his client." *Profit Mgmt. Dev., Inc. v. Jacobson, Brandvik & Anderson, Ltd.*, 309 Ill. App. 3d 289, 299 (1999). The duty of confidentiality does not end with the termination of legal representation. *See* Ill. Rule of Prof. Conduct 1.9(c)(2); Comment [20] to Rule 1.6.

Abramson argues that since he hired Levin as a "Legal Ghost Writer" who would not become an attorney of record, Levin had an obligation to perform services that "absolutely no one would ever know about other than [his] attorney of record." (Dkt. 45 ¶¶ 23, 25.) Levin argues that she did not reveal any confidential information that she learned during the representation, and she did not mention anything about Abramson's position in that case. Instead, she simply revealed that Abramson was the writer of his own Yelp review and stated that he "had been sued by his father (after years of litigation between the family)." (Dkt. 45 at 10; Dkt. 80, DSOF ¶ 12.) Levin wrote these things after Abramson published his review from his Van Richter Records account, revealing in his review that Levin was a "legal ghost writer" who was "supposed to draft and file [his] motion for summary judgment as well as final reply brief." (Dkt. 51, PSOF ¶ 16.) Abramson responds that regardless of what information was already in the public record, his identity and motivations for seeking legal advice were confidential.

The court does not need to decide whether Levin's Yelp response breached a duty of confidentiality, since Abramson fails to plausibly allege that this breach proximately caused any injury. *See Owens v. McDermott, Will & Emery*, 316 Ill. App. 3d 340, 353, 736 N.E.2d 145, 157 (2000) ("The mere fact that an attorney may have violated professional ethics does not, in and of itself, give rise to a cause of action for damages."). Abramson's sole allegation is that Levin's Yelp response revealed to his estranged father that he sought legal ghost-writing services in connection with the litigation between Abramson and his father, and that this information was "highly prejudicial" to that case. For the same reasons that apply to the legal malpractice claim, these conclusory allegations are insufficient to support a breach of fiduciary duty claim. *Cf. West Bend*, 844 F.3d at 678-79. In his brief, Abramson also alludes to emotional damages, the "loss of potential clients"

and possibility that "customers of Van Richter Records" may be "insecure in their relationship with Defendant Abramson knowing about such private legal affairs and dysfunctional family matters." (Dkt. 77 at 21.) His declaration includes similar allegations. (Dkt. 77-1 at 3 ¶¶ 17, 19.) These concerns are too speculative to plausibly suggest that Levin's breach of fiduciary duty has caused Abramson injury. The claim for breach of fiduciary duty (Count III) is dismissed without prejudice to repleading.

## II. Motion to Strike Affirmative Defenses

Levin also moves to strike the eight affirmative defenses in Abramson's First Amended Answer (Dkt. 78), pursuant to Rule 12(f).[10]

"The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Affirmative defenses are pleadings, and they will be stricken "only when they are insufficient on [their] face." *Heller Fin., Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989). While the Seventh Circuit has not decided whether the heightened standard of *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570, applies to affirmative defenses, the "majority view" is that the heightened standard enunciated in those cases applies to affirmative defenses. *Shield Tech. Corp. v. Paradigm Positioning, LLC*, No. 11-cv-06183, 2012 WL 4120440, at *8 (N.D. Ill. 2012); *see also Sarkis' Cafe, Inc. v. Sarks in the Park, LLC*, 55 F. Supp. 3d 1034, 1040 (N.D. Ill. 2014). An affirmative defense should be pled with "sufficient factual matter" to be "plausible on its face." *Iqbal*, 556 U.S. at 678. "As a practical matter, however, affirmative defenses rarely will be as detailed as a complaint (or a counterclaim); nor do they need to be in most cases to provide sufficient notice of the defense asserted. But a problem arises when a party asserts boilerplate defenses as mere placeholders without any apparent factual basis." *Behn v. Kiewit Infrastructure Co.*, No. 17-cv-05241, 2018 WL 5776293, at *1 (N.D. Ill. Nov. 2, 2018) (citing *Dorsey v. Ghosh*, 2015 WL 3524911, at *4 (N.D. Ill. 2015)).

Abramson's first defense ("Failure to Mitigate") is adequately pled. Abramson alleges that "Plaintiff has failed to take any action to have the Yelp review removed to date nor even sent a demand to Paul to take it down prior to or after commencing her lawsuit." (Dkt. 78 at 14.) This allegation supports a viable defense to a defamation claim. "While Illinois does not require plaintiffs to request a retraction as a prerequisite to recovering damages in a defamation action, defendants are not precluded from offering the lack of a request for retraction as

---

[10] Levin first moved to strike Abramson's original set of affirmative defenses. (Dkt. 49.) After Abramson filed his amended affirmative defenses (Dkt. 78), Levin filed a "reply" in support of her motion to strike (Dkt. 82), in which she asks the court to strike the amended defenses. The court construes this reply as a renewed motion to strike directed at Abramson's amended affirmative defenses.

evidence of failure to mitigate damages." *Desnick v. Am. Broad. Companies, Inc.*, No. 93-cv-6534, 1999 WL 51796, at *2 (N.D. Ill. Jan. 29, 1999). Likewise, Abramson's seventh defense ("Truth and No Malice") raises the truth of the statements, and substantial truth is an affirmative defense to defamation. *Doctor's Data*, 170 F. Supp. 3d at 1103; *Kapotas*, 2015 IL App (1st) 140534, ¶ 34. Levin provides no basis for dismissing this defense.

Abramson's fifth defense ("Unclean Hands") reads as follows:

The plaintiff is not entitled to obtain an equitable remedy because the plaintiff is acting unethically and has acted in bad faith with respect to the subject of the complaint by filing a nuisance, frivolous, baseless shakedown lawsuit with no merit. Furthermore, plaintiff has violated the duty of confidentiality by posting the private fact that Paul Abramson hired a "ghost writer" to assist him in litigation.

(Dkt. 78 at 15-16.) "Under Illinois law, the doctrine of unclean hands prevents a party from obtaining equitable relief if that party itself has engaged in misconduct in connection with the subject matter of the litigation." *Intercon Sols., Inc. v. Basel Action Network*, 969 F. Supp. 2d 1026, 1064 (N.D. Ill. 2013), *aff'd*, 791 F.3d 729 (7th Cir. 2015) (citing *Wolfram Partnership, Ltd. v. LaSalle Nat'l Bank*, 328 Ill. App. 3d 207, 222 (2001)). Levin has not cited any relevant authority on the doctrine of unclean hands in Illinois, or any applicable pleading requirements specific to this defense. Since Levin has not articulated a basis for dismissal, the court declines to strike affirmative defense five.

However, the court strikes Abramson's second defense ("No Damages"). It is not a proper affirmative defense, since for the purposes of responding to Levin's complaint (as opposed to establishing his counterclaim), Abramson does not bear the burden of proof on the issues of damages. *See Winforge, Inc. v. Coachmen Indus., Inc.*, 691 F.3d 856, 872 (7th Cir. 2012) ("[A] defense is an affirmative defense (a) 'if the defendant bears the burden of proof' under state law or (b) 'if it [does] not controvert the plaintiff's proof.'") (quoting *Brunswick Leasing Corp. v. Wis. Cent., Ltd.*, 136 F.3d 521, 530 (7th Cir. 1998)). For the same reason, the court strikes Abramson's third defense ("Proximate Cause"). Notably, Abramson "specifically denies that the burden of proof on the issue of proximate cause rests on Paul Abramson." (Dkt. 78 at 15.)

Abramson's fourth affirmative defense ("Set Off") invokes the same issue that forms the basis of his counterclaim—Levin's Yelp response. Since an affirmative defense for setoff has no distinct procedural value, the court strikes this defense for clarity. *See Coplay Cement Co. v. Willis & Paul Grp.*, 983 F.2d 1435, 1440 (7th Cir. 1993) ("as a procedural device the setoff has been supplanted by the permissive counterclaim"); *Ace Hardware Corp. v. Marn, Inc.*, No. 06-cv-05335, 2008 WL

4286975, at *8 (N.D. Ill. Sept. 16, 2008) ("A claim for setoff or recoupment is not technically a 'defense' at all, but must be plead as a counterclaim pursuant to Rule 13."). However, for the reasons discussed above, Abramson has adequately stated a counterclaim for defamation.

The court also strikes Abramson's sixth defense ("Unjust Enrichment"), since "unjust enrichment is not an affirmative defense under Illinois law." *Raquet v. Allstate Corp.*, 348 F. Supp. 3d 775, 787 (N.D. Ill. 2018). Abramson's eighth defense states that he "reserves the right to assert additional affirmative defenses." (Dkt. 40 at 12.) This "catchall" defense is improper, since affirmative defenses must be pled based on facts known at the time of the answer. *See Struve v. Electrolux Home Prods., Inc. Life Ins. Plan*, No. 17-cv-08158, 2019 WL 918503, at *6 (N.D. Ill. Feb. 25, 2019); *Wausau Ins. Co. v. Woods Equip. Co.*, No. 01-cv-08009, 2002 WL 398542, at *3 (N.D. Ill. Mar. 14, 2002).

For the above reasons, the court grants in part and denies in part the motion to strike. Affirmative defenses two, three, four, six, and eight are stricken with prejudice.

### III. Cross-Motions for Summary Judgment

The court now turns to the parties' cross motions for summary judgment. Levin moves for summary judgment on her claims for defamation per se and false light invasion of privacy. (Dkt. 50.) Abramson moves for summary judgment with respect to whether he made statements that support a claim for defamation per se or false light. (Dkt. 80.) Thus, these competing motions concern identical issues, and the court evaluates them together. The court applies the procedural requirements of Rule 56 separately to each cross motion for summary judgment. *See Hotel 71 Mezz Lender LLC v. Nat'l Ret. Fund*, 778 F.3d 593, 603 (7th Cir. 2015). "Each movant and nonmovant 'must individually satisfy the requirements of Rule 56.'" *Brownlee v. Catholic Charities of the Archdiocese of Chicago*, No. 16-cv-00665, 2020 WL 977968, at *2 (N.D. Ill. Feb. 28, 2020) (quoting *United Transp. Union v. Ill. Cent. R.R. Co.*, 998 F. Supp. 874, 880 (N.D. Ill. 1998)).

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The substantive law controls which facts are material. *Id.*

The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 323 (1986). After a "properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted). Construing the evidence and facts supported by the record in favor of the non-moving party, the court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (citations omitted). "The controlling question is whether a reasonable trier of fact could find in favor of the non-moving party on the evidence submitted in support of and opposition to the motion for summary judgment." *Id.* (citation omitted). On cross-motions for summary judgment, the court draws inferences "in favor of the party against whom the motion under consideration was made." *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871, 874 (7th Cir. 2015) (citing *McKinney v. Cadleway Props., Inc.*, 548 F.3d 496, 500 (7th Cir. 2008)).

With respect to the facts, the court adopts "a dual, 'Janus-like' perspective" on cross motions aimed at the same claim or defense. *Hotel 71*, 778 F.3d at 603 (citing *Shiner v. Turnoy*, 29 F. Supp. 3d 1156, 1160 (N.D. Ill. 2014)). For the first motion, the court views the facts and inferences in the light most favorable to the nonmovant. If that motion is denied, the court turns to the cross-motion and gives the unsuccessful movant "all of the favorable factual inferences that it has just given to the movant's opponent." *Id.* (citing *R.J. Corman Derailment Servs., LLC v. Int'l Union of Operating Engrs., Local Union 150*, 335 F.3d 643, 647–48 (7th Cir. 2003)). This dual perspective may result in a denial of both motions. *See Shiner*, 29 F. Supp. 3d at 1160.

## B. Defamation Per Se

Levin's Amended Complaint asserts two claims: defamation per se and false light invasion of privacy. Levin first argues that there is no material dispute of fact with respect to any of the elements of her claim for defamation per se. To prevail, Levin must prove that "'the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that [the] publication caused damages.'" *Bd. of Forensic Document Examiners*, 922 F.3d at 831 (quoting *Green*, 234 Ill. 2d at 491, 917 N.E.2d 450). "If a statement's 'defamatory character is obvious and apparent on its face,' it is considered defamation *per se*, with the law then presuming damages." *Bd. of Forensic Document Examiners*, 922 F.3d at 831–32 (quoting *Tuite*, 224 Ill. 2d at 501). "[C]ertain factors may render defamatory statements non-actionable as a matter of law." *Giant Screen Sports*, 553 F.3d at 532. For example, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Examiners*, 922 F.3d at 832; *see also, e.g.*, *Madison*, 539 F.3d at 654. Also,

21

"substantial truth is a complete defense to an allegation of defamation." *Republic Tobacco Co.*, 381 F.3d at 727.

The parties do not dispute that on March 22, 2017, Abramson published the following review on Levin Law's Chicago Yelp profile:

> Craig's list legal predator - not your legal advocate

> Alissa Levin represents herself as a legal ghost writer expert on Craig's list.. [*sic*] That should have been my first red flag. She is nothing more than a con artist who prays [*sic*] on people in legal trouble like yours truly. She was supposed to draft and file my motion for summary judgement as well as final reply brief for a budget of $4000. Instead she blew through the budget then quit when I refused to pay her supplemental bill of $9167 which she illegally charged to my credit card that later was recovered by my credit card company due to a fraudulent transaction. Her pleadings were also stricken by the court which made them worthless and she was not even aware of how to draft an affidavit that does not require a notarized signature. The ARDC later advised me never to hire an attorney off Craig's list and now I know why as those prowling it like Ms. Levin are only looking to take advantage of those already victimized by the legal system. You have been warned

(Dkt. 86, Pl.'s Resp. DSOF ¶ 11.) The court first addresses whether any statements in this review would be legally actionable if false. Abramson argues that some of the statements in the Yelp review are nonactionable statements of opinion. As noted above, "opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law." *Bd. of Forensic Document Examiners*, 922 F.3d at 832. "Whether a statement is an opinion or fact is a question of law." *Madison*, 539 F.3d at 654. In determining whether a statement contains an assertion of fact, a court considers "(1) whether the statement has a precise and readily understood meaning; (2) whether the statement is verifiable; and (3) whether the statement's literary or social context signals that it has factual content." *Id.*

To show that the statements in the review have a readily understood meaning, Levin presents a chart showing the Merriam-Webster definitions of the words in question. For example, since Abramson accused Levin of "prowling" Craig's list, Levin explains that "Prowl" means "to move about or wander stealthily in or as if in search of prey," and that a "Predator" is "an organism that primarily obtains food by the killing and consuming of other organisms." (Dkt. 50 at 10.) But even statements involving a readily understood meaning may not be factually verifiable. The court must decide whether the statements in question are "objectively capable of proof or disproof." *Quinn v. Jewel Food Stores, Inc.*, 276 Ill. App. 3d 861, 867, 658 N.E.2d 1225, 1231 (1995); *see also, e.g., Giant Screen Sports*,

553 F.3d at 535 ("Although 'in one sense all opinions imply facts, the question of whether a statement of opinion is actionable as defamation is one of degree; the vaguer and more generalized the opinion, the more likely the opinion is non-actionable as a matter of law.'") (quoting *Wynne v. Loyola Univ.*, 318 Ill. App. 3d 443, 741 N.E.2d 669, 676 (2000)). Much of Abramson's Yelp review is not factually verifiable. For example, Abramson's statements that Levin is "not your legal advocate," that Levin's filings were "worthless," that Levin "was not even aware of how to draft an affidavit," and that Levin was "prowling" Craig's list and "looking to take advantage of those already victimized by the legal system" are statements of opinion, not fact.

However, as Judge Kennelly held in this case, Abramson's claims that Levin "illegally charged [his] credit card $9167" and that his credit card company later recovered this amount as a "fraudulent transaction" are statements of fact that "have readily understood meanings." *Levin*, 2018 WL 6812657, at *3. These claims are "sufficiently factual in nature to be susceptible of being verified as true or false." *Id.* The same is true for Abramson's claims that Levin exceeded a $4,000 budget and "quit," and that her pleadings were "stricken" by a court. Standing alone, Abramson's statement that Levin is a "con artist who prays [*sic*] on people" might not be a verifiable statement of fact. *See Quinn*, 276 Ill. App. 3d at 867, 658 N.E.2d at 1231 (holding that where it was not "supported by any facts," the defendant's characterization of the plaintiff as a "con artist" was a statement of opinion). However, this accusation is connected to the other specific and factually verifiable statements in the review. In this context, Abramson's characterization of Levin as a "con artist" is not a mere statement of opinion. *See Bd. of Forensic Document Examiners*, 922 F.3d 827, 832 (7th Cir. 2019) ("Context is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements."); *Kumaran*, 247 Ill. App. 3d at 226, 617 N.E.2d at 199 (where the "clear import" of an article was that the plaintiff "was engaged in 'scamming'—cheating or swindling—the courts and his legal adversaries," the use of the word "scam" could support a claim for defamation per se).

Moreover, all these statements fall within recognized categories of per se defamation claims. Statements "that impute the commission of a criminal offense . . . that impute an inability to perform or want of integrity in the discharge of duties of office or employment . . . [or] that prejudice a party, or impute lack of ability, in his or her trade, profession or business" are per se defamatory under Illinois law. *Bryson*, 174 Ill. 2d at 88, 672 N.E.2d at 1214. Abramson's statements call Levin's integrity and ability as an attorney into question and accuse her of a criminal offense by claiming that she "illegally" and "fraudulently" charged Abramson's credit card. *See Levin*, 2018 WL 6812657, at *4. Accordingly, the damages element of Levin's defamation claim is presumed satisfied. *Bd. of Forensic Document Examiners*, 922 F.3d at 831–32 (quoting *Tuite*, 224 Ill. 2d at 501, 866 N.E.2d 114).

As a result, the parties' cross-motions for summary judgment with respect to Levin's defamation per se claim turn on whether these statements—the actionable statements of fact in Abramson's review—were true or false. As noted above, to prevail on defamation, a plaintiff must prove, among other things, that "'the defendant made a false statement about the plaintiff.'" *Bd. of Forensic Document Examiners*, 922 F.3d at 831 (quoting *Green*, 234 Ill. 2d at 491, 917 N.E.2d 450). And, on the other hand, "substantial truth is a complete defense to an allegation of defamation." *Republic Tobacco Co.*, 381 F.3d at 727. "This rule derives from the 'recognition that falsehoods which do no *incremental* damage to the plaintiff's reputation do not injure the only interest the law of defamation protects.'" *Id.* (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228 (7th Cir. 1993) (emphasis in *Haynes*). "An allegedly defamatory statement is not actionable if it is substantially true, even though it is not technically accurate in every detail." *Harris v. Chicago Transit Auth.*, No. 14-cv-09106, 2017 WL 4224616, at *9 (N.D. Ill. Sept. 22, 2017) (quoting *Parker v. House O'Lite Corp.*, 324 Ill. App. 3d 1014, 1026, 756 N.E.2d 286, 296 (2001)). "To demonstrate substantial truth, a 'defendant need only show the truth of the "gist" or "sting"' of the statement at issue." *Harris*, 2017 WL 4224616, at *9 (quoting *Cianci v. Pettibone Corp.*, 298 Ill. App. 3d 419, 424, 698 N.E.2d 674, 678 (1998)). The question of whether a statement is substantially true usually must be resolved by a jury. *See Haynes*, 8 F.3d at 1228 ("Ordinarily the question whether a defamatory work is substantially true although erroneous in some details is for the jury."); *Parker*, 324 Ill. App. 3d at 1026, 756 N.E.2d at 296; *Cianci*, 298 Ill. App. 3d at 424, 698 N.E.2d at 679. For purposes of Levin's motion, the question is whether Levin has shown that no reasonable fact finder could decide that Abramson's statements were substantially true; for purposes of Abramson's motion, the question is whether Abramson has shown that a reasonable fact finder could *only* conclude that his statements were substantially true.

For context, all of the actionable statements of fact at issue appear in the following portion of Abramson's review: "She [Levin] was supposed to draft and file my motion for summary judgement as well as final reply brief for a *budget of $4000*. Instead she blew through the budget then *quit* when I refused to pay her supplemental bill of $9167 which she *illegally charged* to my credit card that later was *recovered* by my credit card company due to a *fraudulent* transaction." (Dkt. 86, Pl.'s Resp. DSOF ¶ 11) (emphases added).) For the following reasons, a reasonable fact finder could reach different conclusions about the underlying events, and thus reasonably could conclude either that Abramson's statements about the events were substantially true or that they were not.

The parties do not dispute that Levin charged Abramson's credit card in the amount of $9,167. They do dispute whether the charge was authorized. Levin argues that this charge was authorized by the terms of the parties' written retainer agreement. (*See* Dkt. 86, Pl.'s Resp. DSOF ¶ 10.) This agreement specified that Levin would charge $315 an hour for legal services. (Dkt. 51, PSOF ¶ 5.) Abramson

24

paid Levin a $4,000 retainer. (*Id.* ¶ 8.) Abramson focuses on certain portions of the retainer agreement that state:

> Upon execution of this Fee Agreement, Client has paid or sent to Attorney $4000.00 retainer which Client authorizes Attorney to immediately use towards the payment of the fees and costs of Attorney. . . .
>
> Client acknowledges that once this retainer is exhausted, Attorney may require replenishment of the Retainer or Attorney may elect to switch Client to monthly billing, either at Attorney's sole discretion. In the event that Client is on monthly invoicing, then payment of such Attorney' [*sic*] fees and costs must be made by Client within twenty-one (21) days of the date of Attorney' [*sic*] invoice and all past due balances shall bear interest payable at 9% per annum until paid. If Client is on retainer, then in the event that Attorney requests replenishment of the Retainer, said funds must be deposited with Attorney within (21) days or unless an earlier deadline is provided by Attorney.
>
> As of the execution of this Agreement, Client authorizes Attorney to utilize the credit card number and information provided in this document, for the payment of any fees and services which are not paid by the time limits imposed herein . . .

(Dkt. 80-1 at 4; Dkt. 79 at 15; Dkt. 80 at 15-16.) Levin argues that the retainer agreement does not support Abramson's claim in the Yelp review that Levin agreed to a $4,000 budget, and the court agrees that the retainer agreement itself does not support this claim (although for other reasons, discussed below, there is a genuine dispute on whether the parties separately agreed to a $4,000 budget). The agreement instead provides that after the $4,000 retainer was exhausted, Levin could bill Abramson for additional amounts.

Levin first invoiced Abramson for $9,167 at 2:25 p.m. on December 2, 2015. (Dkt. 80, DSOF ¶ 8.) Levin ran Abramson's credit card later that same day. (*Id.* ¶ 10.) Abramson argues that he never expressly authorized Levin to charge his card; and he argues, based on the excerpts of the agreement above, that the agreement gave him 21 days to pay Levin after receiving an invoice. (Dkt. 79 at 15; Dkt. 80 at 15-17.) Since Levin did not wait to charge him until 21 days after sending the invoice, Abramson argues that this charge was not authorized by the agreement.

In response, Levin argues that when Abramson terminated the representation, the retainer agreement was also terminated. (*See* Dkt. 86, Pl.'s Resp. DSOF ¶ 10.) Another provision of the retainer agreement (different from the ones on which Abramson focuses) states that "Client shall have the right at any

time to terminate Attorney' services for any reason.  In that event, Attorney will be entitled to be paid for any services performed before being advised of the termination . . . ."  (Dkt. 80-1 at 5.)

To support their arguments, the parties point to their email correspondence.  (*See* Dkt. 80, DSOF ¶ 9; Dkt. 80-1 at 10-14.)  After receiving Levin's invoice on December 2, 2015, Abramson emailed Levin to dispute the amount.  Levin's response included the following: "If you want me to stop all work on your files and do nothing else, I understand and Margaret can finish the case . . . ."  (Dkt. 80-1 at 13.)  Abramson answered: "i want a partial refund and you can stop working since apparently you are only working for your best interest no mine . . ."  (*Id.* at 12.)  Levin then said, "It is no problem to stop work . . . ."  (*Id.*)  A receipt to which Abramson points says that Levin ran the card on December 2.  (*Id.* at 16.)  On the following day, December 3, Levin again emailed Abramson: "Per the email exchange yesterday, please allow this to confirm that you have instructed me to stop all work on your matter."  (*Id.* at 10.)  Abramson responded, "per my voice mail today please call Dan on this fee dispute."  (*Id.*)  Later that day, Levin sent another email: "Paul, I am in receipt of the fax you just issued. I have terminated my representation and our attorney-client relationship per my prior written communication yesterday evening."  (Dkt. 77-1 at 24.)

Levin argues that these emails show her services were terminated before she charged the card.  (Dkt. 86, Pl.'s Resp. DSOF ¶ 10.)  Abramson disagrees, and states in his declaration that while he "did ask Levin to stop working," he "did not formally terminate her services."  (Dkt. 79-1 at 59.)  A reasonable fact finder could interpret the above email correspondence in more than one way.  For example, a reasonable fact finder could reach different conclusions about who terminated the attorney-client relationship and when.  Nonetheless, Levin argues that "even if she breached the agreement that does not make the charge 'illegal.'"  (Dkt. 86, Pl.'s Resp. DSOF ¶ 10.)  But Levin does not further develop this proposed distinction.[11]  Accordingly, the court finds that there is a genuine dispute as to whether Abramson's Yelp statement that Levin "illegally" charged him was substantially true.

Relatedly, there are genuine disputes about whether Abramson's statements that there was a $4,000 "budget" for Levin's representation, and that Levin "quit," were substantially true.  Drawing all inferences in favor of Abramson, a reasonable fact finder could conclude that both claims were substantially true.  But drawing all inferences in Levin's direction, a reasonable fact finder could decide that there

---

[11] "The court will not research and consider the details of defendant's argument where defendant has done little more than provide what would be an opening paragraph to a more properly framed argument."  *Yeager v. Innovus Pharm., Inc.*, No. 18-cv-00397, 2019 WL 447743, at *9 (N.D. Ill. Feb. 5, 2019) (quoting *Dawson v. W. & H. Voortman, Ltd.*, 853 F. Supp. 1038, 1046 (N.D. Ill. 1994)); *see also United States v. Smith*, 26 F.3d 739, 743 (7th Cir. 1994) (courts need not research and construct legal arguments for parties).

was no such budget and that Levin did not quit.  While Levin is correct that the retainer agreement did not establish a flat-fee representation, and it expressly contemplated the possibility of charges above and beyond the $4,000 retainer, Abramson stated in one of his December 2 emails that he "told [Levin] that [she] needed to work within the 4k budget," and that the "budget for the MSJ which we discussed ahead of time . . . was $4,000." (Dkt. 79-1 at 11, 13.)  A reasonable fact finder could thus conclude that there may have been discussion of a budget between the parties that was not memorialized in the retainer agreement.  Additionally, the December 2 and 3 emails do not clearly establish one way or the other whether Levin quit.  Levin was the one who first suggested stopping work, she sent an email stating in part, "I have terminated my representation and our attorney-client relationship," and Abramson maintains that he did not formally terminate her services.  On the other hand, Abramson demanded a partial refund and was the one who instructed her to stop working.

The parties also dispute whether the statement that the amount was "recovered by [Abramson's] credit card company due to a fraudulent transaction" was substantially true.  According to Levin, Abramson initiated a fraudulent charge claim with his bank, which issued a "provisional credit." (Dkt. 51, DSOF ¶ 12.)  At this time, Levin's firm was debited in that amount. (*Id.*)  However, in June 2016, the disputed funds were returned to her bank account. (*Id.* ¶ 13.)  In support, Levin attaches a copy of a Levin Law bank record showing a payment of $9,167 on June 2, 2016. (Dkt. 50-1 at 16.)  Levin further states in a declaration that Intuit Quickbooks, the credit card processing vendor used by Levin's firm, orally confirmed to her that she prevailed in the dispute. (Dkt. 85-1 at 3 ¶ 11.)  Levin also attaches a "Dispute Win Letter" from Intuit Quickbooks that she requested in 2019, stating that "the decision on the chargeback has been made in your favor and we will process a credit to your account . . ." (*Id.* at 13 (letter).)  Abramson argues that the bank record and the letter have not been authenticated and are both inadmissible hearsay. (*See* Dkt. 79 at 3.)  The court does not need to address this argument because Levin's declarations provide independent support for her claims.  Abramson argues that the declarations are "self-serving," but the term "self-serving" may "not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill v. Tangherlini*, 724 F.3d 965, 967 (7th Cir. 2013).

For his part, Abramson attaches a certified business record from Chase Bank dated February 3, 2016. (Dkt. 79-1 at 20, 22.)  In this letter, the Chase Fraud Department informed Abramson that the "outcome of our investigation" was that he was "not responsible" for Levin's charge, and that the "previously issued credits are now considered permanent." (*Id.* at 22.)  In a declaration, Abramson states that since February 3, 2016, he has not been charged again and has had no contact with the card issuer at all other than to obtain certified records. (*Id.* at 59 ¶¶ 10-11.)

Levin argues that even if Abramson's claim that his credit card company refunded him is true, it could be the case that "both Levin and Abramson were protected by their respective credit card companies." (Dkt. 84 at 5.) According to Levin, even if Abramson's credit card company refunded him, the transaction must not have risen to the level of credit card fraud (the implication of Abramson's statement that the charge was "recovered by [Abramson's] credit card company due to a fraudulent transaction") since she was allowed to keep the funds; the fact that Abramson was also permitted to keep the funds is irrelevant. But Levin does not provide any authority to explain why only one side of the transaction matters. Both parties have presented evidence suggesting that at least their own credit card company resolved the charge dispute in their favor. At summary judgment, the court does not weigh this conflicting evidence. A reasonable fact finder could very well conclude that the evidence Abramson has put forward (the letter from the Chase Fraud Department) does not support his statements in the review that the company "recovered" the funds (from Levin or anyone else, as opposed to refunding him from the company's own resources), or that the company did so "due to a fraudulent transaction" (as opposed to finding that he was "not responsible" for the transaction)—and thus could conclude that the statements were not substantially true. But the question is whether *no* reasonable fact finder could conclude that the statements were substantially true. The current record would not categorically rule out such a conclusion.

Finally, Levin argues that it is not true that her "pleadings" were "stricken" by a court. Abramson argues that a court granted a motion to strike the filings that Levin prepared. (Dkt. 80, DSOF ¶ 21.) In support, he attaches a transcript of that proceeding and a court order referencing the "reasons stated in open Court." (Dkt. 79-1 at 23-35.) Levin's sole argument in response is that she drafted three motions and an affidavit, not "pleadings." (Dkt. 84 at 7-8.) In evaluating the substantial truth of a statement, the court must "look at the highlight of the article, the pertinent angle of it, and not to items of secondary importance which are inoffensive details, immaterial to the truth of the defamatory statement." *Gist v. Macon Cty. Sheriff's Dep't*, 284 Ill. App. 3d 367, 371, 671 N.E.2d 1154, 1157 (1996) (citing *Vachet v. Central Newspapers, Inc.*, 816 F.2d 313, 316 (7th Cir. 1987)). With respect to stricken court filings, even if Abramson's review is not "technically accurate in every detail," *Harris*, 2017 WL 4224616, at *9 (quoting *Parker*, 324 Ill. App. 3d at 1026, 756 N.E.2d at 296), Levin has failed to argue that Abramson's claim is not substantially true.

In sum, neither Levin nor Abramson has established that they are entitled to summary judgment on Levin's defamation claim. To prevail, Levin must show that there is no genuine dispute of fact regarding the substantial truth of Abramson's statements—the "gist" or "sting" of those statements. *Harris*, 2017 WL 4224616, at *9 (quoting *Cianci*, 298 Ill. App. 3d at 424, 698 N.E.2d at 679). Since a reasonable fact finder could find that every verifiable statement of fact in Abramson's Yelp

review is substantially true, the court denies Levin's motion with respect to her defamation claim.

However, considering these factual disputes, Abramson has not shown that he is entitled to summary judgment either. Claims in Abramson's review would be defamatory per se if not substantially true, and there are genuine disputes of fact about whether most of those claims were substantially true. Thus, the court denies Abramson's motion for summary judgment on the issue of whether he made statements that support a claim for defamation per se. *Bd. of Forensic Document Examiners*, 922 F.3d at 831.

### C. False Light Invasion of Privacy

Both parties also move for summary judgment on Levin's claim for false light invasion of privacy. "Under Illinois law, there are three elements to such a claim: first, the allegations must show that the plaintiff was placed in a false light before the public as a result of the defendant's actions; second, the court must decide whether a trier of fact could decide that the *false* light in question would be 'highly offensive to a reasonable person'; and third, plaintiffs must allege and prove that the defendants acted with actual malice, defined in the familiar way as knowledge of falsehood or reckless disregard for whether the statements were true or false." *Pope v. Chronicle Pub. Co.*, 95 F.3d 607, 616 (7th Cir. 1996) (emphasis in original) (quoting *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill.2d 1, 607 N.E.2d 201, 209-10 (1992)); *see also Raveling v. HarperCollins Publishers Inc.*, No. 04-2963, 2005 WL 900232, at *3 (7th Cir. Mar. 4, 2005); *Thompson v. Vill. of Monee*, No. 12-cv-05020, 2013 WL 3337801, at *24 (N.D. Ill. July 1, 2013).

The parties' arguments are substantially similar to their arguments regarding Levin's defamation per se claim. "While it is not necessary to be defamed to maintain a false light claim, the similarities between defamation and false light claims may make certain restrictions and limitations for defamation equally applicable to false light claims." *Moriarty v. Greene,* 315 Ill. App. 3d 225, 237 (2000). Defamation and false light claims both require the plaintiff to prove that the defendant made false statements. "Absent some allegation as to what specific statement was false, a claim based on *false* light simply fails to satisfy the most basic element of the cause of action." *Mitchell v. Plano Police Dep't*, No. 16-cv-07227, 2017 WL 4340118, at *7 (N.D. Ill. Sept. 29, 2017) (emphasis in original) (citing *Kirchner v. Greene*, 294 Ill. App. 3d 672, 683 (1998); *see also Raveling*, 2005 WL 900232, at *3 (noting that a "substantially true" statement cannot support a false light claim under Illinois law); *Madison*, 539 F.3d at 659; *Muzikowski*, 477 F.3d at 907. As discussed above, a reasonable fact finder could decide that the statements in Abramson's review were substantially true.

Additionally, if a false light claim is based on statements that are not defamatory per se, the plaintiff must show special damages. *Muzikowski v.*

*Paramount Pictures Corp.,* 322 F.3d 918, 927 (7th Cir. 2003) (citing *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 735, 554 N.E.2d 988, 994 (1990)). The parties have not raised, nor has the court reached, any argument one way or the other about whether Abramson's statements do or do not fall into the categories of defamatory per se under Illinois law. And, as discussed above, neither side has shown that it is entitled to summary judgment on Levin's defamation per se claims. Levin has not established as a matter of law that any statements in the review were per se defamatory. Accordingly, she would need to show special damages to prevail on her false light claim on summary judgment. Levin has not made the requisite showing. "General allegations, such as damage to an individual's health or reputation, economic loss, and emotional distress, are insufficient" to establish special damages. *Schaffer*, 196 Ill. App. 3d at 733, 554 N.E.2d at 992. Levin must instead "prove that she sustained actual damage of a pecuniary nature." *Bryson*, 174 Ill. 2d at 87–88, 672 N.E.2d at 1214. Levin has not pointed to any facts in the record that could support a finding of special damages.

Since Levin has no possible route to summary judgment on her false light claim, the court denies her motion. But the dispute about whether the actionable statements of fact in Abramson's review were substantially true also precludes summary judgment for Abramson. Abramson argues that the court should enter summary judgment in his favor on Levin's false light claim because (1) the statements in his review were either opinion or true statements of fact, and (2) Levin has not pointed to facts that could establish special damages. (Dkt. 80 at 18.)

Starting with the second argument, Abramson is correct that Levin has not pointed to any facts in the record that could support a finding of special damages. "General allegations, such as damage to an individual's health or reputation, economic loss, and emotional distress, are insufficient" to establish special damages. *Schaffer*, 196 Ill. App. 3d at 733, 554 N.E.2d at 992. To succeed on a false light claim, a plaintiff must instead "prove that she sustained actual damage of a pecuniary nature." *Bryson*, 174 Ill. 2d at 87–88, 672 N.E.2d at 1214. Levin has not made such a showing. However, Levin would only need to show special damages if her false light claim was based on statements that are not defamatory per se. *Muzikowski v. Paramount Pictures Corp.,* 322 F.3d 918, 927 (7th Cir. 2003) (citing *Schaffer v. Zekman*, 196 Ill. App. 3d 727, 735, 554 N.E.2d 988, 994 (1990)). As discussed above, there are material disputes of fact about whether the review contained statements that *are* defamatory per se. Since Abramson cannot establish that all of his factual statements were true as a matter of law, the court denies Abramson's motion as well.

## Conclusion

For the reasons given above, the motion to dismiss [48] is granted in part and denied in part. Counts 2 and 3 of the counterclaim are dismissed without prejudice to repleading. If Abramson wishes to file an amended counterclaim, he must do so

by June 10, 2020.  The motion to strike [49] is granted in part and denied in part.
Affirmative defenses 2, 3, 4, 6, and 8 are stricken with prejudice.  Levin's motion for
summary judgment [50] and Abramson's cross-motion for summary judgment [80]
are denied.

Date: May 13, 2020                        /s/ Martha M. Pacold